STEADMAN v. STEADMAN.

(Filed December 11, 1906).

*Ejectment—Estoppel—Wills—Probate—Limitations—Declarations of Grantor—Evidence—Construction of Will.*

1. Where the jury, by their verdict, have established that both plaintiff and defendant claim the land in controversy under the same testator, the defendant is, for the purposes of this action, estopped from questioning the title of the common grantor.

2. Where in an action of ejectment it appears that the testator died in 1857, and there was an attempted probate of his will at that time which was invalid because it did not comply with the law as it then existed, the will, upon a second probate in 1906 in compliance with the requirements of Revisal, section 3127, clause 3, having been duly recorded, was properly admitted as evidence.

3. In the absence of some statute to the contrary, there is no limit upon the time after a testator's death within which a will may be proven, and when duly proven it relates back to the death of the testator so as to vest title from that date as between the parties who claim under it.

4. In an action of ejectment, a party who claims under a deed from a devisee in a will cannot question the validity of the probate of the will.

5. In an action of ejectment, the declarations of defendant's grantor while in possession of the property to the effect that she held under the will of her father, are competent as characterizing and accompanying the possession of the declarant.

6. Where a will provided, "It is my will that my eldest daughter, Susannah, and my son James shall have a certain tract of land lying on the waters of Dills' Creek, to be equally divided in value between them; and then also one other tract lying on the waters of Jarrett's Creek. It is my will that my son John and daughters Mary and Margaret be equal sharers in said tract of land during their natural life": *Held*, that all of the devisees being dead, the heirs at law of James and Susannah are the owners of the entire interest in the second or Jarrett tract, and the Court erred in holding that the testator died intestate as to this tract after a life-interest therein to his children.

ACTION of ejectment by Sarah Steadman and others against W. R. Steadman and others, heard by *Judge M. H. Justice* and a jury, at the April Term, 1906, of the Superior Court of RUTHERFORD.

There was evidence offered showing:

That Joseph Steadman died in Rutherford County in 1857, leaving a last will and testament, signed Joseph (X) Steadman, and witnessed by two subscribing witnesses.

That Joseph Steadman left six children and heirs at law: Susannah and James A. Steadman, John, Sarah, Margaret, and Mary Steadman.

That all the devisees mentioned in the will were dead at the time of the action brought; John, Sarah, Mary, and Margaret having died without issue.

At the death of Margaret, she left a last will and testament devising her property to her sister Mary, who died not long before the institution of this suit.

The tract of land, the subject of this controversy, is the second or 150-acre tract mentioned in the will of Joseph Steadman, and the language of the will pertinent to the questions involved is as follows:

"It is my will that my eldest daughter, Susannah; and my son James A., shall have a certain tract of land containing one hundred acres lying on the waters of Dill's Creek, to be equally divided in value between them, and then also one other tract containing one hundred and fifty acres, lying on the waters of Jarrett's Creek. It is my will that my son John and daughters Mary and Margaret be equal sharers in said tract of land during their natural life. It is my will that my daughter Sarah shall have equal in value with my son John and daughters Mary and Margaret, to be paid out of the other portion of my estate, due allowances to be made by my daughter Susannah and son James A. and daughter Sarah for property already received. And all other property (except the mare which I now own) to be equally divided between my son John and daughters Mary and Margaret."

The plaintiffs, who claim the land under this will, are the children and heirs at law of Susannah and James A., two of the devisees named in the will.

The defendants claim under a deed from Mary, one of the devisees named in the will.

Issues were submitted that were responded to by the jury as follows:

1. Did John Steadman, Margaret Steadman and Mary Steadman claim title to the land described in the complaint under Joseph Steadman? Answer: Yes.

2. Are the plaintiffs the owners in fee and entitled to the possession of the land described in the complaint? Answer: Yes; eleven-fifteenths.

3. Is the defendant in the unlawful and wrongful possession thereof? Answer: Yes.

4. What damages, if any, have plaintiffs sustained by reason of defendant's wrongful and unlawful possession? Answer: Fifteen dollars for each year; total, $30.

On the verdict, the Court gave judgment in favor of plaintiffs for eleven-fifteenths of the land in controversy.

Both plaintiffs and defendants excepted and appealed.

*S. Gallert* for plaintiff.

*McBrayer & McBrayer* and *B. A. Justice* for defendant.

## DEFENDANTS' APPEAL.

HOKE, J, after stating the case: The jury, by their verdict, having established that both plaintiffs and defendants claim the land in controversy under Joseph Steadman, the alleged testator, the defendants are, for the purposes of this action, estopped from questioning the title of the common grantor; and can, in any event, only claim the estate that may have come to them by reason of the deed from Mary Steadman, the devisee, or one of the heirs at law of her father, the said Joseph.

Defendants object to the validity of this trial, and assign for error:

1. That the Court admitted in evidence the paper-writing purporting to be the last will and testament of Joseph Steadman. This paper-writing bearing date 28 November, 1857, signed by Joseph (X) Steadman and attested by two witnesses, Joseph Owens and Drewry McDaniel, when offered as evidence, had thereon two probates, one bearing date December, 1857, in which it is shown that "Drewry McDaniel, one of the subscribing witnesses, upon being duly qualified, proved the due and solemn execution of the will; and the second, bearing date 12 April, 1906, set out *in extenso* in the record, and in all things complying with the requirements of Revisal 1905, sec. 3127, clause 3, which provides as follows:

"In all cases where the testator executed the will by making his mark, and where any one or more of the subscribing witnesses are dead or reside out of the State, or are insane or

otherwise incompetent to testify, it shall not be necessary to prove the handwriting of the testator, but proof of the handwriting of the subscribing witness or witnesses so dead, absent, insane or incompetent shall be sufficient."

The first probate was invalid, because at the time it was taken proof by one of the subscribing witnesses, without more, was not sufficient proof of a will. This was all that had been required under the Revised Statutes for proof of a will in common form in the first instance; Revised Statutes, ch. 122, sec. 6; but the Revised Code, which went into effect on 1 January, 1856, required that a written will with witnesses should be proved by the oath of two of the subscribing witnesses, if living, etc. Revised Code, ch. 119, sec. 15.

At the time the will was proven, The Code had probably not been universally distributed; or, what is more likely, the Courts of Pleas and Quarter Sessions had not become familiar with the changed method.

Whatever may have been the reason, the first probate did not comply with the law as it then existed; and, standing alone, would not justify the admission of the will in evidence.

The plaintiff, recognizing that this probate was not in compliance with the statute, then offered proof establishing the second probate, which in all things complied with the requirements of the law, showing that one of the subscribing witnesses was dead and the other had for many years been a nonresident.

It is objected to this proof that the same is too late, and cannot now be received; but the authorities do not support this position.

In the absence of some statute to the contrary, there is no limit upon the time after a testator's death within which a will may be proven. Gardner on Wills, p. 314.

In *Haddock v. Railroad,* 146 Mass., 155, a will was admitted to probate sixty-three years after the death of the testator.

.And while the will does not operate to pass property till proven, as required by law, when it is so proven it relates back to the death of the testator so as to vest title from that date as between the parties who claim under it. Underhill on Wills, vol. 1, p. 21, note 3; citing *Graves v. Mitchell,* 90 Wis., 316; *Coggeshall v. Home,* 18 R. I., 696. See also, *Scott v. West,* 63 Wis., 529.

Nor does the attempt to prove the will in accordance with the law as it formerly existed affect the present probate, which, in all things, complies with the present law. *Morgan v. Bass,* 25 N. C., 243.

Nor, in any event, could the probate be questioned by one who claims under the will by this indirect method. *London v. Railroad,* 88 N. C., 585; *Hampton v. Hardin,* 88 N. C., 592.

The probate of this will being valid, and the same having been duly recorded, the will was properly admitted as evidence.

Defendant further objects that the Court admitted in evidence the declarations of Mary Steadman while in possession of the property, to the effect that she held under the will of her father, Joseph.

These declarations are competent as characterizing and accompanying the possession of the declarant, and were also properly received. *Nelson v. Whitfield,* 82 N. C., 46; *Bivings v. Gosnell,* 141 N. C., 341.

There is no reversible error to defendants' prejudice shown in the record, and on their appeal the judgment is affirmed.

No Error.

PLAINTIFFS' APPEAL.

HOKE, J. As heretofore stated, the verdict having established that both parties claim under Joseph Steadman, and the will of Joseph Steadman, making some disposition of the property, having been properly proven and admitted in evi-

dence, the rights of the parties on this appeal will depend on the correct construction of this will.

The language of the will pertinent to the questions involved here is as follows:

"It is my will that my eldest daughter, Susannah, and my son James, shall have a certain tract of land containing one hundred acres, lying in the waters of Dills' Creek, to be equally divided in value between them; and then also one other tract containing one hundred and fifty acres, lying on the waters of Jarrett's Creek. It is my will that my son John and daughters Mary and Margaret be equal sharers in said tract of land during their natural life."

The land in controversy is the second, or Jarrett tract, and the Judge below, in construing the will, in effect decides that the testator died intestate as to the remainder of this tract after a life-estate therein to his children; but we do not think that this is the correct interpretation of the will.

It is an accepted principle that the presumption is against intestacy. Underhill on Wills, vol. 1, p. 617; *Blue v. Ritter*, 118 N. C., 580.

And another principle has long been incorporated into our statute law, that a devise to a person shall be construed to be in fee-simple unless it shall plainly appear that the testator intended an estate of less dignity. Revisal 1905, sec. 3138.

This will, in express terms, devises the Jarrett tract of land to Susannah and James A. Steadman; which, under this statute, would give them the land in fee. And while the clause which immediately follows imposes a life-estate in favor of John, Mary, and Margaret, whether such estate is to these three or to them as tenants in common with James and Susannah, the result is the same. The subsequent clause only creates a life-estate; and all of the devisees of such estate being dead, the children and heirs at law of James and Susannah, to whom the fee-simple was given by the prior

clause, at the death of the life-tenants, became, and are now, the owners of the land.

Mary, being only a life-tenant, her deed would only convey to the grantees such estate as she had; and on her death, which occurred about six months before suit commenced, the rights of the children and heirs at law of James and Susannah, who held in remainder, would become absolute, giving them the title and right to the immediate possession of the property. *Southwick v. Briggs,* 23 N. C., 281; *Brothers v. Brothers,* 44 N. C., 265.

Nor do we think the idea advanced, that the testator evidently wished his children to share equally in his estate, changes the result. Such a general intent is sometimes helpful where the language of a will is of doubtful import; but an indefinite, general intent cannot avail, and is never allowed, to change or control a devise express in its terms and without doubt as to its meaning. *Crissman v. Crissman,* 27 N. C., 498; *Long v. Waldraven,* 113 N. C., 337.

It will be noted, too, that the clauses of the will from which this general intent is inferred rather tend to show that such equality as was contemplated was intended to arise from other portions of the estate, and was not designed, and should not be permitted, to affect the construction of the devise involved in this litigation.

The Court is of opinion, and so holds, that on the facts presented, a proper construction of the will of Joseph Steadman places the entire interest in the land in dispute in the plaintiffs, who are children and heirs at law of James A. and Susannah Steadman, and the Judge below should have so instructed the jury.

For the error pointed out, there will be a new trial on the second issue, and it is so ordered.

Partial New Trial.