Strafford,
April 2, 1929.

FRANCIS LESSARD & a.

v.

GREAT FALLS WOOLEN COMPANY.

*William H. Sleeper* (by brief and orally), for the plaintiffs.

*Hughes & Burns* and *Lucier & Lucier* (*Mr. Burns* orally), for the defendant.

SNOW, J. It is conceded that the injury to the minor was due to the defendant's negligence and that independent rights of action accrued, one in the minor for the injury, and the other in the father for the loss of services. The principal issues raised by the exceptions have to do only with (1) the period for which recovery for loss of services may be had, and (2) the proper parties plaintiff.

1. The court ruled that there could be no recovery after the date of the appointment of the brother as guardian on the ground that such appointment, as a matter of law, terminated parental control and, *per* consequence, the parents' right to the child's service. This was error.

At common law the father was entitled to the services of his minor child during minority (*Gale* v. *Parrot*, 1 N. H. 28, 29; *Campbell* v. *Cooper*, 34 N. H. 49, 62) and could, therefore, recover of a third person whose wrongful conduct deprived him thereof. In this country it is generally held that the right to such services grows out of, and is correlative to, the parental obligation to maintain and train his offspring. *Id.*, 62, 63. It accrues to the father by way of compensation for "the support, nurture, care, protection and education *actually afforded and furnished* the child" during minority. *Hammond* v. *Corbett*, 50 N. H. 501, 505, 508; *Campbell* v. *Cooper, supra*, 64; *Chaloux* v. *Company*, 75 N. H. 281, 285; *Jenness* v. *Emerson*, 15 N. H. 486, 489, 491; *Hillsborough* v. *Deering*, 4 N. H. 86, 95. Such right can be lost only by emancipation. Emancipation may be accomplished by agreement express or implied; it may arise from conduct of the parent inconsistent with his claim to the further obedience or service of the child; or it may occur by operation of law.

The defendant's contention is that the brother's guardianship worked an emancipation by law. In support of this claim it cites P. L., *c.* 290, *s.* 6, which in terms gives to a guardian the "full custody and control" of his ward and "his estate and earnings." The provisions of this section are applicable only to guardians appointed on

petition of the public authorities. Such petition must be supported by proof that "the parents . . . are unfit to have the custody and control of said minor and of his estate and earnings, or that his parents are living apart and the circumstances are such that the interests of such minor require that a guardian be appointed." It is expressly provided that such appointment shall not relieve the parents from their obligations of support, s. 12. The provisions dealing with this special guardianship, however, have no bearing upon the question under consideration. The guardianship here was not under s. 6, but under s. 1 which provides for the appointment of "a guardian to any minor whenever there is occasion." The exigencies which may call for such guardianship of a minor are numerous, and such an appointment does not necessarily carry any implication of the unfitness of the parents to have the custody of the person of their children or to perform their natural obligations to them.

Whether there was an "occasion" within the meaning of the statute for the appointment of the guardian in Rockingham county, and, if not, whether the legality of such appointment may be attacked collaterally for want of jurisdiction are questions which need not be answered in the determination of the issues here, and the same have not been considered.

P. L., c. 290, defines the powers and duties of a general guardian. Sec. 18, "Every guardian shall have the custody and tuition of the minor, and the care and management of his estate, and shall continue in office until the minor arrives at the age of twenty-one years, or until discharged"; s. 19, "Every guardian of a minor shall inculcate habits of sobriety and industry in his ward, and may employ him in any suitable labor. . . ." The position of the defendant appears to be that the appointment of the guardian with such powers and duties *ipso facto* revokes all authority of the parent over the child, and that with the passing of such authority all rights to the child's services are lost. We find no such necessary inconsistency in the powers and duties of parents and guardians as to warrant such a conclusion. The appointment of a guardian does not of itself relieve the parents and child of their natural obligations to each other and does not necessarily interfere with the continued performance thereof. It is frequently the case that parents, abundantly competent to maintain and educate a child, are wholly unfitted to manage its property rights or to protect such rights in litigation. It is not infrequent, in such cases, for the parents to secure the appointment of a stranger as guardian with the design that the latter takes care of the property rights of his ward

without disturbing the natural relations of parent and child. In such a case it is not unlawful for the guardian to waive his superior right to the custody of the person of his ward in order that the parental duties may be the better performed. The right of the parents to the service and earnings of their minor children continues so long, during minority, as the latter remain under their control and are supported by them. *Hillsborough* v. *Deering, supra.* See *Riley* v. *Jameson,* 3 N. H. 23, 29. The mere power of the guardian to take custody of the minor does not cut it off. Unless and until the guardian has justifiable cause to interrupt the performance of the parental duties upon which the parents' right to the services depends there is no emancipation. Then it is the occasion for the guardian's action and not the guardianship that works the emancipation. It would be a travesty of the law if a guardian's unexercised right to custody were to be held to deprive the parents of the right to the obedience and service of the ward to which the continued performance of their obligation entitles them. No such rule of law exists.

Reliance is placed by the defendant upon expressions employed by this court in *Aldrich* v. *Bennett,* 63 N. H. 415, and in *Hammond* v. *Corbett,* 50 N. H. 501, 508, to the effect that the right of a parent to the earnings of his minor child is commensurate with the right of custody (*Aldrich* v. *Bennett, supra*), and that such right of custody may be superseded by the appointment of a guardian. *Hammond* v. *Corbett, supra.* In neither case was the court dealing with any conflict between the relative rights of parents and other guardians. The expressions are abstract statements of law which afford no support for the proposition urged by the defendant that the mere appointment of a guardian terminates the obligations and compensating rights of parents.

While *prima facie* the right to custody is in the parents until a guardian is appointed (*State* v. *Richardson,* 40 N. H. 272, 274; P. L., c. 290, s. 4) and then in the guardian (*Id.,* s. 18) the right of neither is absolute. *Chaloux* v. *Company,* 75 N. H. 281, 285; *Campbell* v. *Cooper,* 34 N. H. 49, 63; *Woodworth* v. *Spring,* 4 Allen 321, 326. Both are charged with trusts to be exercised for the child's best interests, and each is subject to the control of court. *State* v. *Richardson, supra.* While the relation of the one and the official character of the other are important, other considerations may be of controlling significance. The courts have authority, upon appropriate proceedings to make such an award of the custody as will best promote the interests of the child. *Hanrahan* v. *Sears,* 72 N. H. 71, 73; *State*

v. *Richardson, supra,* 273. See *White* v. *White,* 77 N. H. 26, 30; *Gage* v. *Gage,* 66 N. H. 282, 286; P. L., c. 350, s. 1. A guardian is no less amenable to the orders of the court than are the parents. The welfare of the child and the good of its estate may require that the custody of the person of the ward be placed with the parent, leaving with the guardian the administration of its property. If it be in the best interest of his ward that the guardian shall exercise his trust as respects tuition and the inculcation of habits in his ward (P. L., c. 290, ss. 18, 19) through the instrumentality of the parents such course may be adopted by the parties without a compelling order of the court. In fact such an amicable division of responsibilities is common and is to be commended. It appears to be the contention of plaintiffs' counsel that such was the case here. The only official acts of the guardian disclosed by the record were the bringing and prosecuting the minor's claim for his damages against this defendant. The custody and support of his ward remained undisturbed with the parents. The plaintiff should have been allowed to show these facts.

2. There was no error in the ruling that the mother was a proper party plaintiff. Our present statute (Laws 1911, c. 104, s. 1; P. L., c. 290, s. 4) constitutes the father and mother joint guardians of the persons, and gives them equal powers, rights and duties, in respect to such a child. The right to service, being correlative to the duty to support, accrues to the parent who actually performs the duty. Whether the father or the mother or both have entitled themselves to compensating services of the minor is a question of fact. Their relative or respective rights cannot be fixed by a rule of law in advance of the submission of the evidence.

The action under the amended writ being based upon the parental right to recover the loss of the services of the child during minority, neither the child nor its guardian was a proper party plaintiff. Unless emancipated, a minor cannot recover of the defendant for the loss of wages during his minority. The ruling denying the motion to make the mother, as guardian, a party was, therefore, correct.

*New trial.*

All concurred.