Hillsborough,
Jan. 5, 1932.

SARAH SOUTHERN *v.* WALTER E. KITTREDGE, *Adm'r.*

*Frederick J. Grady* (by brief and orally), for the plaintiff.

*Walter E. Kittredge* (by brief and orally), for the defendant.

MARBLE, J.  In August, 1925, the plaintiff went to work for the decedent, who was then over eighty years of age, with the understanding that she was to live with her for the remainder of her life, assisting her and attending to the general housework and receiving as compensation the sum of two dollars a week and a devise of the decedent's dwelling-house.

There is evidence that Mrs. Leavitt executed a will in accordance with the terms of the contract, and the amount of the weekly payments appears as a credit in the specification.  The plaintiff worked for Mrs. Leavitt until May, 1926; then left her, and obtained employment elsewhere.   She explains her understanding of the contract and her excuse for ceasing work as follows:

"She [Mrs. Leavitt] asked me what I would come to work for her for, and I told her my wages were twelve dollars a week.  She said that she could not pay that, but 'I will tell you what I will do.   I will pay you two dollars a week and will this home to you.'  I consented to that and she told me afterwards that she had made a will but she would not show it to me.  I wanted her to make a deed or put it in trust for me—something to be signed.  I wanted it in trust.  I didn't want it then but I wanted to keep it in trust so that I would know it would be mine.  . . . I was willing to stay with her until the end came. That was the agreement I made with her . . .

"She promised me faithfully that house if I would take care of her faithfully while she lived and I intended to do it.  . . .  She wouldn't give me a deed or an assignment of the place. . . .  When she didn't show me the will or give me anything signed, I thought she was not going to . . . .   If she made a will and showed it to me, it would be all right, and I would have my signing on it . . .  I thought I could sign it so she could make it over to me."

"A contract to devise or bequeath property can be performed by making a valid will at any time during the life of the promisor, and

leaving it in force at his death. Such contract can not be broken by non-performance until the death of the promisor. If the promisor dies without leaving a valid will in accordance with his contract, the contract is broken." 1 Page, Wills (2d *ed.*), *s.* 99. And in such event the promisee may enforce the contract against the estate of the deceased promisor. *Day* v. *Washburn,* 76 N. H. 203, 204.

But the agreement in the present case is not an enforceable one, since a contract to devise real estate is within the statute of frauds. *Ham* v. *Goodrich,* 37 N. H. 185. Unless the will which Mrs. Leavitt executed contained some reference to the agreement (and there is no evidence that it did), it was not in itself a sufficient memorandum. 27 C. J. 259 and cases cited; 24 Mich. Law Rev. 749, 779.

If, then, the plaintiff had fully performed her part of the agreement (and the decedent had died without leaving a will in her favor), she would not have been entitled to a decree for specific performance "in the absence of facts showing that she would be the victim of a fraud" if equitable relief were denied. *Muir* v. *Bartlett,* 78 N. H. 313, 315. See also *McCrillis* v. *Company, ante,* 165; *Weeks* v. *Lund,* 69 N. H. 78.

Since the decedent's promise was not to pay in money but in real estate, the doctrine of *Britton* v. *Turner,* 6 N. H. 481, does not apply. *Roundy* v. *Thatcher,* 49 N. H. 526. The case of *Crawford* v. *Parsons,* 18 N. H. 293, holding that the promisee under an oral agreement to labor for a term and take a lot of land in payment may stop work at his pleasure and recover the value of the services rendered, has been virtually overruled. *Clements* v. *Marston,* 52 N. H. 31, 39.

Ordinarily, the promisee in default under an unenforceable contract of this kind is not at liberty to treat the contract as void and sue on a *quantum meruit* if the promisor is willing to perform his part of the bargain. *Lane* v. *Shackford,* 5 N. H. 130, 133; *Clements* v. *Marston, supra.*

The record discloses no evidence to support the plaintiff's contention that it could be found, as in *Clements* v. *Marston,* that there was a further agreement to reduce the contract to writing which the decedent unreasonably refused to perform. Nor does it appear that the plaintiff requested the decedent to join her in signing a memorandum of the contract. The only reasonable interpretation that can be given the plaintiff's testimony is that she desired a deed or trust arrangement.

It is therefore unnecessary to determine the soundness of the suggested rule that a plaintiff in default may recover "if it appears that before default he requested the defendant to join him in signing such

a written memorandum as would comply with the requirements of the statute, and that the defendant refused or failed within a reasonable time so to do." Woodward, Quasi Contracts, s. 98, p. 156. See also Williston, Contracts, s. 538, pp. 1044, 1045.

The motion for a nonsuit should have been granted.

*Judgment for the defendant.*

All concurred.