Hillsborough, } No. 4010.
Mar. 6, 1951. }

ROLAND R. ANCTIL, *Adm'r v.* AUGUSTE DUPONT.

502

*Leonard & Leonard* (*Mr. Thomas J. Leonard*), for the plaintiff.

*Leonard G. Velishka* and *Aaron A. Harkaway* (*Mr. Harkaway* orally), for the defendant.

DUNCAN, J. At the time of the transactions giving rise to this action the plaintiff's intestate, a resident of Manchester, was visiting in Nashua at the home of the defendant, and his wife who was the decedent's sister. There was evidence that the order upon the savings bank although dated December 28 was executed on the morning of December 29 and thereupon delivered to the defendant. It was witnessed by the defendant's wife and by an employee of a grocery store with which the defendant did business, who testified that he was there at the decedent's request. It was not disputed that at the decedent's request the defendant went to Manchester and withdrew the money on December 29. He testified that he returned to his home about noontime and delivered the proceeds in cash to the decedent who placed them in his trousers pocket. In this the defendant was corroborated by his wife and by the same grocery boy, who testified that he had returned to the house with an order of groceries.

The decedent was suffering from asthma and died of heart failure at about six P. M. on December 30. Shortly thereafter his body was removed to an undertaking establishment operated by his brother. There was evidence that the latter found only some loose change on the decedent's person. The defendant testified that the decedent's wallet which was in a suit jacket left at the house contained only twenty-seven dollars following his decease.

The evidence was in conflict as to whether the decedent left the defendant's house on the afternoon of December 29 and as to whether he was physically able to do so. The defendant testified that he was gone the entire afternoon and that he was also away from the house on the morning of the thirtieth. There was evidence of statements made by the defendant which tended to indicate that for several days before his death the decedent was unable to leave his chair because of his asthmatic condition. A niece testified by deposition that she visited with him at the defendant's home between two and three o'clock on the afternoon of the twenty-ninth, and that he "looked very sick" and moved about with difficulty. His attending physician testified that he treated him for an acute asthmatic attack in the late forenoon of the thirtieth.

The testimony of the defendant, his wife and the delivery boy, if believed, was doubtless sufficient to establish delivery of the money to the decedent. Whether this testimony was entitled to credence was for the Trial Court. The Court "might, if it saw fit, reject it entirely as worthless." *Bill* v. *Company*, 90 N. H. 453, 457. The fact that the testimony was not directly contradicted did not require its acceptance. *Eastman* v. *Waisman*, 94 N. H. 253, 254. See also, *Owen* v. *Dubois*, 95 N. H. 444, 446.

While disbelief of the defendant's evidence would not warrant a contrary finding that the money was not delivered to the decedent (*Brickell* v. *Company*, 93 N. H. 140, 144), such a finding was nevertheless warranted by the other evidence. The money was not found after the decedent's death. The evidence failed to account for its disappearance if it was delivered to the decedent and did not compel the conclusion that it was. If, as the plaintiff claimed, the decedent was unable to leave the house after the money was procured, the fact that it was not upon his person or among his effects at death was evidence that he never received it. Taken with the undisputed evidence that the defendant withdrew the money from the bank, it warranted the verdict charging him with the amount withdrawn. See *Goddard v. Hazelton, ante,* 231, 232.

*Judgment on the verdict.*

All concurred.