Merrimack,
No. 6027.

CONNIE HEATH, by her mother
and next friend, JEAN E. HEATH

*v.*

JAMES J. SEYMOUR *& a.*

JEAN E. HEATH

*v.*

SAME.

CONNIE HEATH, by her mother
and next friend, JEAN E. HEATH

*v.*

PAUL REHBERG, *Adm'r.*

JEAN E. HEATH

*v.*

SAME.

JEAN E. HEATH

*v.*

REGINALD HEATH

October 30, 1970.

426

*Frederic T. Greenhalge* and *L. Wilder Quint* orally, for Reginald Heath.

*Upton, Sanders & Upton* ( *Mr. Richard F. Upton* orally ), for Jean E. Heath Lemieux.

LAMPRON, J. Motion filed June 25, 1968 by plaintiff Reginald Heath, individually and as administrator of the estate of Connie Heath deceased minor daughter of Reginald Heath and Jean Heath, now Lemieux, against Jean Heath Lemieux to bring forward for modification a decree of the superior court entered June 13, 1961, approving the settlement of the above-captioned actions brought by defendant Jean, individually and as mother and next friend of Connie. These actions resulted from an automobile accident in Hopkinton on September 23,

1959 in which Connie, age three, sustained severe injuries which incapacited her to the time of her decease on November 4, 1967.

A hearing before *Flynn*, J. resulted in certain findings and rulings and a decree which granted plaintiff's motion to bring forward; vacated a part of the prior decree of the superior court; and directed the defendant to turn over to plaintiff, as administrator, the sum of $46,742.02, the balance of a "trust fund," including any interest thereon.

Defendant's exceptions to the denial of her motions to dismiss, to certain findings and rulings and to the denial of her requests for others, and to the court's decree were reserved and transferred.

Reginald and Jean were married on January 16, 1953. On April 13, 1959 Jean brought a divorce libel and was granted temporary custody of their two minor children and of an adopted child. Certain actions to recover damages resulting from the accident to Connie were instituted by the mother, as mother and next friend and individually, on September 25, 1959 and others at a later date. Her counsel conferred about these actions with counsel for the husband in the pending divorce proceedings. Counsel reported that his client Reginald would not participate in the actions and wanted no part of them. On December 23, 1959, a divorce was decreed to the wife effective January 5, 1960. The court's decree incorporated a stipulation of the parties granting the custody of the children to the mother with reasonable visitation rights to the father who was to pay $15 weekly for the support of the children, and disposing of the property of the parties.

Connie was hospitalized from the time of her injury, on September 23, 1959, to the day of her decease, on November 4, 1967. She received a brain stem injury and remained decerebrate. On January 18, 1960, a neurosurgeon reported that "the prognosis of this child is extremely poor." On May 31, 1961 he reported further as follows: "This patient at the present time expresses a chronic brain syndrome. I originally was of the impression that this might extend for life expectancy of 15 to 20. I am most inclined to believe that she will go longer providing her care continues to be as adequate as it has been in the past. This may extend on to the age of 30 or 40."

The tort actions were disposed of by a compromise settlement

of $75,000 approved by the superior court on June 13, 1961 in a decree on a petition seeking such approval. RSA 462:2; 491 App. R. 84. This action followed two conferences on successive days with the presiding justice by counsel for Connie and her mother on the first day, then with the mother Jean and a person suggested as trustee also present on the second day.

The decree ordered that out of the $75,000 settlement there be paid ( 1 ) counsel fees and disbursements in the amount of $15,471.96 and medical expenses of $4,300.22 for a total of $19,772.18; "( 2 ) Of the balance of $55,225.82 then remaining, $7,724.82 thereof be paid to Jean E. Heath, and $1.00 thereof be paid to Jean E. Heath, as mother and next friend of Connie Heath; and ( 3 ) The final balance of $47,500.00 be paid to Arthur F. Wright . . . in trust . . . to apply and expend for the benefit of Connie Heath, during her lifetime, so much or all of the net income as the trustee, in his discretion, shall deem advisable for her care, support and comfort. In addition, the trustee may apply and expend for the care, support and comfort of Connie Heath such part or parts of the principal of the trust fund as the said Court may first approve . . . .

"Upon the decease of Connie Heath, if she is survived by her mother, Jean E. Heath, the principal and all unpaid accrued net income of said trust estate shall be paid over and conveyed to the said Jean E. Heath, free of trust. Upon the decease of Connie Heath, if she is not survived by her mother, said principal and net income shall be paid over and conveyed to such person or persons as Jean E. Heath shall appoint by her last will and testament, and in default of the exercise of such power of appointment or to the extent the same is not validly exercised, then to the issue of Jean E. Heath living at the decease of Connie Heath, such issue to take per stirpes."

After the hearing on Reginald's motion, the trial court ruled that the superior court lacked jurisdiction to include the latter paragraph in its decree of June 13, 1961. It further ruled that "[T]he ownership of the proceeds of the accident settlement, which were placed in trust, was vested in Connie subject to controls established for her protection during her minority by this Court. Upon Connie's death, the trust fund passed according to the laws of descent and distribution ( RSA 561:1, 6 )."

Counsel for plaintiff Reginald correctly maintain that the superior court had no jurisdiction over the estate of the deceased

Connie and could not regulate its devolution in its decree approving the settlement of the tort actions. N.H. Const., pt. 2, art. 80; *Lisbon Sav. Bank &c. Co.* v. *Moulton's Est.,* 91 N.H. 477, 480, 22 A.2d 331, 334 ( 1941 ); 1 Treat, Probate Law *s.* 12 ( 1968 ). If that was the intended purpose of that part of the decree which was set aside in the present proceedings, the ruling of the trial court in this case was proper under the well established principle that a judgment or order of a court having no jurisdiction of the subject matter is void. *Kittredge* v. *Emerson,* 15 N.H. 227, 261 ( 1844 ); *Tebbetts* v. *Tilton,* 31 N.H. 273, 289 ( 1855 ); Restatement Judgments *ss.* 7, 10 ( 1942 ). The operation of this rule is not affected by any judicial discretion possessed by the court. 46 Am. Jur. 2d Judgments *s.* 24 ( 1969 ).

However, it is to be presumed that the superior court in its decree approving the settlement intended to act within the scope of its authority and not to exceed it. *Kuether* v. *Kuether,* 174 Wis. 538, 542, 183 N.W. 695, 696 ( 1921 ); 46 Am. Jur. 2d Judgments *s.* 29 ( 1969 ). In support of the decree, defendant Jean maintains that the court could, and properly did, allocate the sum of $47,500 in question to her the responsible parent as consequential damages to be utilized to pay for the future hospital and medical care of Connie. In support of this contention she points to the granting by the court in the present proceeding of her request No. 31 which reads as follows: " The consequential damages were, at the time of settlement, of such probable magnitude as would have justified awarding directly to Mrs. Heath the entire net amount of the settlement as such consequential damages. "

This finding and ruling is in accord with what has been described as the majority view in this matter. 39 Am. Jur. Parent and Child *s.* 80 ( 1942 ); 1 Harper and James, Law of Torts *s.* 8-8, at 631 ( 1956 ). When a minor child is injured by the negligent act of a third party two causes of action arise. One by the child itself for personal injuries upon it; a second by the parent or parents for consequential damages such as loss of services and expenses caused by the injury to the child. *Bennett* v. *Hymers,* 101 N.H. 483, 486-87, 147 A.2d 108, 111 ( 1958 ); *Savard* v. *Cody Chevrolet, Inc.,* 126 Vt. 405, 234 A.2d 656 ( 1967 ). The majority view, so-called, is that the wrongdoer is liable to the parent who is under a legal duty to furnish medical treatment for any expenses reasonably incurred

or likely to be incurred for such treatment during the child's minority. Restatement Torts *s.* 703 ( b ). It has also been held that the parent can recover for medical expenses to be incurred for the infant even after it reaches majority. *Peer* v. *City of Newark,* 71 N.J. Super. 12, 33-34, 176 A.2d 249, 261 ( 1961 ). The minority view holds that the proper party to recover for future medical expenses is the child itself. *Clarke* v. *Eighth Ave. R.R.*, 238 N.Y. 246, 250, 144 N.E. 516, 517 ( 1924 ); 1 Harper and James, Law of Torts *s.* 8.8, at 631 ( 1956 ); 4 Shearman and Redfield, Negligence *s.* 859 ( rev. ed. 1941 ).

There was no record made of the conferences held with the presiding justice who approved the settlement of the tort actions. However, it is not disputed that Connie became a decerebrate as a result of the accident. The trial court in the present proceedings found that "[I]t seemed probable that she would remain a hospital patient the rest of her life, permanently and totally disabled. " There was medical evidence that she might live to the age of 30 or 40. There was testimony that the charges of the hospital where she was confined had increased from $ 32 per week to $ 63 at her decease and that the trend "is . . . steadily upward. "

In order to discover the intent of the presiding justice who approved the settlement it is permissible to refer to the facts and circumstances which were probably considered by him at the time. *Kuether* v. *Kuether,* 174 Wis. 538, 542; 183 N.W. 695, 696 ( 1921 ). Furthermore, as stated previously, these should be considered with the presumption that the court intended to act within the scope of its authority, and not to exceed it. *Id.* Thus construing the court's decree as a whole, we hold that the court intended to and did award the sum of $ 47,500 as consequential damages for the future expenses likely to be incurred for the care of Connie to the mother Jean as the parent to whom her custody had been awarded and who had brought the action to recover for such expenses. *Bennett* v. *Hymers,* 101 N.H. 483, 147 A.2d 108 ( 1958 ); *Whitaker* v. *Warren,* 60 N.H. 20, 26 ( 1880 ); *Schmidt* v. *Kratzer,* 402 Pa. 630, 168 A.2d 585 ( 1961 ); Annot., 32 A.L.R.2d 1060, 1076 ( 1953 ). This conclusion is corroborated by evidence that it might be difficult to ascertain if Connie was conscious of pain and suffering and that her earning capacity after majority was very problematical. These ordinarily would be major items of damages in the ac-

tion brought on her behalf. 1 Harper and James, Law of Torts *s.* 8.8, at 633 ( 1956 ).

RSA 462:2 imposed upon the presiding justice the duty to see that the settlement of the minor's claim was fair and that its proceeds were preserved and applied for her benefit. *Cnaeps* v. *Brown,* 101 N.H. 116, 117, 135 A.2d 721, 723 ( 1957 ). *See Valdimer* v. *Mount Vernon Hebrew Camps, Inc.,* 9 N.Y.2d 21, 24, 172 N.E.2d 283, 284 ( 1961 ). "[ T ]he court may make all necessary orders for protecting the interests of the infant . . . ." RSA 462:2. An appropriate means to that end is to impose a trust on the funds for the duration of the infant's minority, or for life in this case, and to place the administration thereof under supervision of the court as was done here. RSA 491:App. R. 84. *See* RSA 558:20; Annot., 3 A.L.R.3d 1170, 1172 ( 1965 ).

However this money is awarded to the parents as consequential damages arising out of the injury to their minor child. *Bennett* v. *Hymers,* 101 N.H. 483, 486-87, 147 A.2d 108, 111 ( 1958 ); *Lessard* v. *Great Falls Woolen Co.,* 83 N.H. 576, 145 A. 782 ( 1929 ). The father's and mother's powers, rights and duties in regard to a minor child are equal in the usual family situation. RSA 463:4. When the parents are living together, the father usually sues for these consequential damages and receives what is awarded. *Woodman* v. *Peck,* 90 N.H. 292, 294, 7 A.2d 251, 253 ( 1939 ); *Ernshaw* v. *Roberge,* 86 N.H. 451, 456, 170 A. 7, 10 ( 1934 ). When Connie was injured and the tort actions were instituted, however, her parents were living apart. The mother Jean had been granted temporary custody under a libel for divorce which she had brought. Before the settlement of these actions, Jean had been granted a divorce and awarded the permanent custody of the minor children.

Under these circumstances the presiding justice could properly assume that the mother Jean who had brought the suits and in whose custody Connie had been legally placed would be the parent charged with her future care. The court therefore properly awarded to her the consequential damages to which the parents were entitled. At the decease of Connie, the control imposed thereon for her benefit terminated. The principal amount which remained intact was not the property of Connie's estate to descend according to the provisions of RSA 561:1, 6. On the contrary, there being no further expenses to be incurred on behalf of Connie, Jean was entitled to the possession of the bal-

ance free and clear of any encumbrance. Consequently the ruling of the trial court in the present proceeding that this fund was the property of Connie and passed at her decease in accordance with the laws of descent and distribution was in error and the decree ordering that these moneys be turned over to Reginald as administrator of her estate is set aside.

These consequential damages had not been awarded when the parties were divorced. They were not the subject of their stipulation, nor were they the object of the superior court's decree in that proceeding. The respective and relative rights of the parents to the balance of the award made for consequential damages to their minor child cannot be fixed by rule of law in advance of the submission of evidence on the issue. *Lessard* v. *Great Falls Woolen Co.,* 83 N.H. 576, 581, 145 A. 782, 785-86 ( 1929 ). These rights were not in issue in the settlement proceedings under RSA 462:2 nor in the divorce proceedings. Reginald cannot be bound by the *ex parte* decree made by the court in approving the settlement of the tort actions. He was not a party thereto and it dealt with the fairness of the settlement ( *Cnaeps* v. *Brown,* 101 N.H. 116, 135 A.2d 721 ( 1957 ) ) and not the property rights of the respective parents in the consequential damages awarded. *Patey* v. *Peaslee,* 101 N.H. 26, 28, 131 A.2d 433, 435 ( 1957 ). Nor would the court's decree constitute a collateral estoppel preventing him from litigating that issue. *Ainsworth* v. *Claremont,* 108 N.H. 55, 56, 226 A.2d 867, 869 ( 1967 ). He can properly seek an order in these proceedings determining whatever interest he should have in the balance of the award which remained at the decease of Connie.

The trial court denied Jean's requests for findings and rulings that Reginald was estopped from seeking relief because he was guilty of fault or negligence in failing to participate or intervene in the tort actions and that he was also barred by laches. On the record before us we find no error in the court's action. *Valhouli* v. *Coulouras,* 101 N.H. 320, 142 A.2d 711 ( 1958 ). Nor do the provisions of RSA 526:4 regulating new trials constitute a bar. *Stritch* v. *Stritch,* 106 N.H. 409, 411, 213 A.2d 426 ( 1965 ).

On December 23, 1959, the divorce decreed between Jean and Reginald on a libel filed by her incorporated the terms of a stipulation by the parties. It awarded the custody of their three minor children to Jean and ordered Reginald to pay $ 15 weekly for their support. Certain tangible property was awarded to

Jean and some to Reginald. Their real estate, standing in joint names, was awarded to Reginald disencumbered of any claim of Jean.

At that time the actions to recover for the injuries to Connie, and for the consequential damages to her parents, which later became the subject of the settlement decree now in controversy, were still pending. The amount to be recovered in these actions, whatever sum might be allocated for consequential damages, and the balance thereof which might be left unexpended at Connie's decease were undetermined and unpredictable. Consequently the value of these actions at the time of the divorce necessarily was not a factor in the distribution made of the assets of the parties or in any order for support imposed on Reginald. Although an existing asset, these actions, including the amount of consequential damages to be awarded, did not acquire a fixed dollar value until the tort settlement was approved almost a year and a half after the divorce became final. The amount ascribed to consequential damages which would remain free of any trust for the care of Connie was not known, until almost eight years after the parties were divorced.

Jean was awarded the consequential damages as a parent of Connie and as a result of her marriage relationship with Reginald. In their divorce proceeding the superior court had the power and authority to determine their respective rights in all their assets in making an equitable adjustment of their property rights and other orders in the decree. *Kibbee* v. *Kibbee,* 99 N.H. 215, 108 A.2d 46 ( 1954 ). That power can be exercised now under these circumstances. *Stritch* v. *Stritch.,* 106 N.H. 409, 213 A.2d 426 ( 1965 ).

There is no fixed rule or mathematical formula to govern the court's action as the amount of the property to be allowed to a spouse depends upon the facts of the particular case. In exercising its discretion in this respect, the court may consider the efforts and attitudes of the parties toward the acquisition of the asset, their contribution in money and toil to its preservation, and all other factors usually associated with the determination of an award of property between spouses. *See Kibbee* v. *Kibbee,* 99 N.H. 215, 108 A.2d 46 ( 1954 ); *Stritch* v. *Stritch supra; Douglas* v. *Douglas,* 109 N.H. 41, 242 A.2d 78 ( 1968 ); *Wallace* v. *Lougee,* 107 N.H. 251, 221 A.2d 780 ( 1966 ); Annot., 32 A.L.R.2d 1060, 1087 ( 1953 ).

The case is remanded to the superior court for a determination of the respective rights of the parties in the balance of the

consequential damages which remained unexpended at Connie's decease.

*Decree vacated; remanded.*

All concurred.