Belknap
No. 6796

JAMES G. LOVELL AND JO ANN LOVELL

v.

MAVIS C. HARVEY

April 30, 1974

*Stanley, Tardiff & Shapiro (Mr. R. Peter Shapiro* orally) for the plaintiffs.

*Normandin, Cheney & O'Neil* and *David O. Huot (Mr. Huot* orally) for the defendant.

G RIFFITH, J. The Trial Court (*Johnson,* J.) decreed specific performance of a purchase and sale agreement executed by the parties for the sale of certain land situated in New Hampton, New Hampshire. During the trial, defendant seasonably excepted to the denial of her motions for a nonsuit and directed verdict and to the rulings of the court admitting and excluding evidence. After trial defendant excepted to the decree and findings and rulings of the court and moved to set the decree aside. The motion to set the decree aside was denied subject to exception and all questions of law were reserved and transferred by the trial court.

On July 19, 1964, plaintiffs paid a deposit of $25 and executed a purchase and sale agreement with Warren and Mavis Harvey for the purchase of approximately 140 acres of land in New Hampton. The agreement provided that the Harveys were to convey good and marketable title to the property on September 1, 1964. The plaintiffs were to pay $600 at the time of transfer and the balance of the purchase price of $2500 in the three annual installments plus five percent interest on the unpaid balance. Shortly after executing the agreement plaintiff James Lovell discovered that there was a boundary dispute with an adjoining landowner named Alfred Jenness involving twenty acres and the major access to the property. Mr.

Lovell informed the Harveys' real estate agent Vernal Drake of the boundary dispute and Drake informed him that the defect would be attended to. However, because of the boundary dispute no attempt was made by the parties to complete the sale on the agreed date.

James Lovell was a schoolteacher and in 1965 taught at Cushing Academy in Massachusetts. From 1965 to 1967 Lovell inquired from time to time of Drake, either by letter or in person during school vacations, about the settlement of the boundary dispute. During this period he consulted Attorney Willard Martin who sent him an opinion from a surveyor indicating the boundary problem could best be settled by agreement with Jenness. In the summer of 1967, Lovell learned that Mr. Harvey had died. He testified that he called on Mrs. Harvey who told him she would talk to Mr. Jenness. Lovell also testified that he spoke to Jenness at that time without success. There was no communication between the parties in the period from the summer of 1967 until early 1969. Mr. Lovell testified that illness in the family prevented his coming to New Hampshire during this period. In March of 1969, Lovell wrote Attorney Martin who was settling Mr. Harvey's estate. In his reply Martin suggested that Lovell attempt to reach an agreement with Jenness. During the latter part of the summer of 1969, Mrs. Harvey told Lovell that she did not intend to complete the sale and offered to return the deposit. Lovell refused to accept the return of the deposit and brought this action for specific performance. At the trial, plaintiff Lovell stated that they would accept a conveyance subject to the boundary dispute.

The trial court found "that the plaintiffs and the defendant (and her husband) went through a rather confusing period of several years with neither party sure as to who had the responsibility of going forward. In any event, the court does not find the plaintiffs guilty of laches and specifically finds that the defendant agreed on June 22, 1969, to go forward with the sale." In view of the plaintiffs' agreement at trial to accept a conveyance with the boundary defect the trial court ordered specific perform-

ance without liability to the defendant for any claim of Alfred Jenness to the premises.

Defendant argues first that neither party was ever in a position to perform the contract in accordance with its terms and the trial court was required to find that the plaintiffs were not at all times ready and willing to complete the purchase. This argument misconstrues the situation of the parties. During the entire period until plaintiff announced on the stand his willingness to accept the defective title it was the defendant who was unable to perform the contract by delivering a good title. Since the defendant was never in a position to perform in accordance with the agreement plaintiffs were relieved of any necessity of proving their ability to complete the purchase. *Leigh v. Rule,* 331 Mass. 664, 121 N.E.2d 854 (1954); 6 S. Williston, Contracts § 832 (3d ed. 1962); 81 C.J.S. *Specific Performance* § 103, at 625 (1953).

Defendant contends that the trial court erred in not finding the plaintiffs guilty of laches. "The issue as to laches is primarily one of fact." *Hould v. Company,* 83 N.H. 474, 476, 144 A. 261, 263 (1929); *Valhouli v. Coulouras,* 101 N.H. 320, 142 A.2d 711 (1958). It is apparent that the trial court accepted the plaintiffs' explanation for the hiatus in 1967 and 1968 and of the generally persistent efforts of the plaintiffs to force completion of the transaction. Conflicts in testimony were for the determination of the trial court and we cannot say that a contrary result was required. *Frost v. Polhamus,* 110 N.H. 491, 493, 272 A.2d 596, 597 (1970); *Heath v. Seymour,* 110 N.H. 425, 432, 270 A.2d 602, 607 (1970).

The decree ordering specific performance subject to the boundary dispute was within the trial court's discretion where the plaintiffs had indicated a willingness to accept such a conveyance. "When the vendor is unable to fully perform his contract on account of 'any deficiency in the title, quantity, quality, description, or other matters touching the estate', although his inability may be good ground for relieving the vendee from the performance of his contract, it furnishes no reason for relieving the vendor where the vendee elects to proceed with the purchase. He has

the right to the specific enforcement of the contract so far as it can be performed." *Hallett v. Parker,* 68 N.H. 598, 599, 39 A. 433, 434 (1896); Annot., 11 A.L.R.2d 390, 435 (1950); *see* Restatement of Contracts § 365, Comments *c* and *d* at 660-61 (1932); 5A A. Corbin, Contracts § 1160 (1964).

*Defendant's exceptions overruled.*

Kenison, C.J., concurs in the result; the others concurred.