Hillsborough
No. 6817

RICHARD C. MOORE & a.

v.

STERLING WARNER INDUSTRIAL INVESTMENT CORPORATION & a.

July 30, 1974

*Winer, Lynch, Pillsbury & Howorth* (*Mr. H. Philip Howorth* orally) for the plaintiffs.

*Clancy & O'Neill* (*Mr. Frank B. Clancy* orally) for the defendant.

PER CURIAM. Bill in equity for specific performance of an agreement by the defendant to sell the plaintiffs certain real property situated in Pelham. Trial by the Trial Court (*Cann, J.*) with a view resulted in a decree for the plaintiffs. Defendant's exceptions to the denial of certain requests for findings of fact and rulings and its motion to set aside the verdict were reserved and transferred by the trial court.

Victor T. Guertin is the sole stockholder and president of defendant corporation. On June 14, 1971, he entered into an agreement on behalf of the corporation to purchase the property which is the subject matter of this suit from the Rose Cataldo Trust for the sum of $22,000. On June 18, 1971, the defendant corporation agreed to sell the property to the plaintiffs for $28,000 and accepted a down payment of $500. This agreement, which is the basis for the present action, provided that the sale would be completed on or before August 1, 1971.

In the latter part of July 1971, Victor Guertin was informed by Henry Cote, the real estate broker who brought about the sale, that there were flaws in the title which made it unmarketable. The most serious flaw was an undischarged mortgage on the property held by a Mrs. Talbert, then a resident of Florida. Although this mortgage had been paid, Mrs. Talbert was unwilling to execute a discharge and it was necessary to bring a bill in equity to remove the cloud on the title. This was brought at the instigation of Victor Guertin sometime in the fall of 1971 when it was learned that Mrs. Talbert refused to execute the mortgage discharge. Because of a failure of service in the original action, it became necessary to bring a second action and the decree clearing the title was not actually obtained until April 18, 1972. Defendant had taken a deed to the property from the Cataldo interests in December 1971, retaining about $2,000 of the purchase price until the title was cleared. At that time the defendant expected the title would be cleared in another week and Guertin notified the plaintiff and suggested a closing with the purchase price held in escrow, but was informed by the plaintiff through his attorney that they would wait until the title was cleared. Subsequently when Guertin discovered that additional time would be required to clear the title, he testified that he wanted to terminate the contract, but there is no evidence that Moore was notified of Guertin's wish until after the title was cleared in April when Guertin refused to complete the transaction.

The defendant argues that the contract expired August 1, 1971, the date for completion named in the agreement,

and that the trial court was in error when it ordered specific performance at a later date. "The general rule is that unless specifically so stated, time is not to be considered as of the essence. (Citations omitted.) The mere fact that a date is stated in the instrument is not sufficient alone to alter this rule." (Citations omitted.) *Guy v. Hanley,* 111 N.H. 73, 75, 276 A.2d 1, 3 (1971); *see Sawin v. Carr,* 114 N.H. 462, 323 A.2d 924 (1974). The delay in this case was not the fault of the purchasers who at all times were prepared to complete the transaction upon receiving a marketable title. Their contract provided that they should receive from the seller a "good and sufficient deed of the property free and clear of all encumbrances." This the defendant was not in a position to tender until after the decree of April 18, 1972. The attempt of the defendant in December 1971 to insist that the plaintiffs accept something less than the contract provided for did not entitle defendant to rescind the contract. Rescission of the contract because of an unmarketable title is by the terms of the contract only "if the Buyer elects." *See Lovell v. Harvey,* 114 N.H. 299, 319 A.2d 292 (1974). This the buyers did not elect to do but at all times insisted upon purchasing the property when the title was cleared. Under these circumstances the trial court could properly decree specific performance. "[O]rdinarily a binding agreement for the sale of real estate will be specifically enforced in equity because the unique character of real estate makes the damages for breach of contract irreparable as a matter of law." *Jesseman v. Aurelio,* 106 N.H. 529, 532, 214 A.2d 743, 746 (1965); *Gulf Oil Co. v. Rybicki,* 102 N.H. 51, 52, 149 A.2d 877, 879 (1959).

Defendant's remaining argument centers around defendant's claim for labor and materials expended on the property between the time of the agreement and until the bringing of plaintiffs' bill in equity in June 1972. As part of the agreement of purchase and sale, the defendant had agreed to repair and finish certain work in the house and the buyer had agreed to do certain painting. It appears that the parties performed the work agreed upon and that the buyer moved certain furniture into the house in the fall of 1971 and removed it at the request of the seller in May 1972. Initially

the seller claimed that it was required to repaint the work of the plaintiffs because of its poor workmanship and heat the property because of the presence of the plaintiffs' furniture. In answer to plaintiffs' interrogatories, Victor Guertin detailed expenses caused by the plaintiffs in the amount of $1,937.36. At trial he testified that Granite State Improvement Company, another company owned by him, had provided material and labor for the property in the amount of $8,300. The trial court found "that the defendant deliberately undertook major repairs and renovations of the premises without notice to or permission from the plaintiffs; all the while knowing that the plaintiffs wanted performance under their sales agreement; the court further finds that any vastly changed conditions were brought about by the unilateral actions of the defendant." Finally the trial court found and ruled "that in order to prevent unjust enrichment of the plaintiffs, restitution is ordered for the defendant's expenditure of $1,937.36, as sworn to by the defendant in his answer of November 28, 1972, to the plaintiffs' interrogatories, and that title is awarded to the plaintiffs upon payment to the defendant of the total sum of $29,437.36."

The evidence of the defendant on this issue consisted primarily of the testimony of Victor Guertin heretofore referred to. Neither the books nor records of defendant corporation nor of Granite State Improvement Company were offered to show the expenses claimed and no detailed statement was offered. The only other evidence in support of this claim was that of a Mr. Levesque who testified he worked on the premises for 200 or 300 hours at $2 per hour. The trial court was not required to accept such testimony as establishing the amount of defendant's expenses, even though uncontradicted. *Kalman v. Hutcheson,* 111 N.H. 36, 40, 276 A.2d 260, 263 (1971); *Dustin v. Lewis,* 99 N.H. 404, 406, 112 A.2d 54, 56 (1955); *Anctil v. DuPont,* 96 N.H. 501, 503, 79 A.2d 11, 12 (1951). The opinion of Cote, the real estate broker, that the property at the time of trial was worth in excess of $42,000 stands on the same footing, since the trial court "might, if it saw fit, reject it entirely as worthless." *Bill v. Company,* 90 N.H. 453, 457, 10 A.2d 662, 664 (1940).

Even had the trial court accepted this opinion of value as accurate, it would not, as suggested by the defendant, require a denial of specific performance. *See Wilkes v. German,* 316 A.2d 200 (Del. 1974).

Significantly the trial court found that the work of the defendant on the premises was deliberately undertaken without permission of the plaintiffs "all the while knowing the plaintiffs wanted performance under their sales agreement." "The common law has long had a pronounced policy that benefits may not be forced upon a party against his will, so as to require him to pay for them." Wade, *Restitution for Benefits Conferred Without Request,* 19 Vand. L. Rev. 1183 (1966). Relief from this rule is afforded by RSA 524:2, 3, 4 to permit recovery for improvements by a party dispossessed of land who has been in peaceable possession for more than six years under a claim of right. However, the older cases have consistently denied recovery for improvements to parties who occupied land with knowledge of the rights of others. As to such parties it is said he "must be deemed to have made the improvements, for which compensation was sought at the trial, for his own convenience and benefit, and at his own risk." *Walker v. Walker,* 64 N.H. 55, 56, 5 A. 460, 461 (1886); *Phelan v. Adam,* 79 N.H. 348, 108 A. 814 (1920); *Tripe v. Marcy,* 39 N.H. 439 (1859).

While the findings of the trial court supported by evidence might have warranted a denial of all restitution to the defendant (*see* D. Dobbs, Remedies § 4.9 (1973); Restatement of Restitution § 2 (1937)) and strict adherence to our earlier cases would appear to require it, the court undertook to order restitution in an amount determined sufficient to prevent unjust enrichment of the plaintiffs. This was a correct application of the modern rule in equity based upon an implied finding by the trial court that the defendant acted in good faith in making the improvements. "[T]he test of recovery is not how much the owner is enriched by the improvements, but how much he is unjustly enriched." *Madrid v. Spears,* 250 F.2d 51, 54 (10th Cir. 1957); Wade, *Restitution for Benefits Conferred Without Request,* 19 Vand. L. Rev. 1183 (1966). The amount determined by the trial court as sufficent

to prevent unjust enrichment was all the defendant was entitled to under the circumstances of this case. A contrary result is not required by the evidence and we sustain the trial court's decree.

Defendant's complaint that the trial court failed to rule upon certain of its requests is without merit since the trial court listed them and correctly noted that other findings rendered them irrelevant.

*Defendant's exceptions overruled.*