Carroll
No. 7642

## LINDA DANDENEAU *& a.*

### v.

## NANCY SEYMOUR

May 31, 1977

*Richard E. Boyer,* of Nashua, by brief and orally, for the plaintiffs.

*Decker & Hemeon,* of Laconia (*David R. Decker*), for the defendant.

BOIS, J. Action for recovery in quantum meruit involving a contract dispute wherein the plaintiffs agreed to construct a "breezeway" and garage addition to defendant's main house in return for the conveyance to them by the defendant of three acres of land and a so-called sap house situated thereon. The plaintiffs failed to render substantial performance of the contract. The defendant cancelled, evicted the plaintiffs and never conveyed the land. The Trial Court (*Douglas,* J.) denied relief in quantum meruit but awarded specific performance on condition that plaintiffs either fully perform their remaining contractual obligations or tender the cash value of those obligations. Defendant's exceptions have been reserved and transferred. We reverse.

On August 12, 1972, the parties entered into a written contract which provided in relevant part as follows:

> In consideration of Edmond Dandeneau building and completing a sun room and garage attached to the house owned by me in North Sandwich, N.H., the undersigned does hereby agree to deed a certain parcel of land containing a sap house. . . .
>
> Edmond Dandeneau does hereby agree to complete to satisfaction the above mentioned sun room and garage.

The parties further agreed that the construction value would approximately equal the $4,000 value of the land to be conveyed.

At the time the contract was formed, the defendant had been living in Florida and the Dandeneaus were renting her house in New Hampshire. This arrangement continued through most of 1973. Considerable work was done on the sunroom and garage in the latter part of 1972 and into early 1973, but thereafter the project was virtually abandoned. The court found the work incomplete in the following respects: one-half of the garage roof to be shingled, doors and windows to be installed, exterior siding to be applied on certain walls, the garage door to be strengthened, steps from the breezeway to the garage to be constructed, insulation and interior finish to be installed and completed in the breezeway. Ac-

cording to the value of labor and materials as found by the trial court, about 73% of the total job had been completed.

As the year 1973 progressed, the plaintiffs found themselves in increasing financial difficulties. Hoping to relieve themselves of rent payments, they directed their efforts to making the sap house livable. In December of 1973, they notified Mrs. Seymour that they had moved from the defendant's house to the renovated sap house and informed her that the purpose of the move was to save rent money which would later be used to finish their contract.

No substantial additional work was done and the plaintiffs continued to devote their attention to the sap house which, of course, by virtue of the original agreement, they hoped to eventually own. These improvements involved considerable cash outlays by the plaintiffs and plaintiffs admitted that, unbeknownst to the defendant, they had cleared and sold timber from the defendant's land and used the proceeds to improve the sap house.

Plaintiffs' finances continued to deteriorate and by their own account their indebtedness grew to the sum of $30,000 or $40,000. The defendant considered and rejected a plan proposed by the plaintiffs under which the agreed-upon land and building would be deeded to a relative of the plaintiffs who would then mortgage same to provide funds with which the plaintiffs could finish the breezeway and garage.

In February of 1975 one of plaintiffs' creditors initiated a suit and attempted to attach defendant's property. Mrs. Seymour traveled to New Hampshire from Florida and successfully contested the attachment in court. In connection with these proceedings, defendant learned that there were many claims outstanding against the plaintiffs. Concerned by the fact that plaintiffs' conduct had seemingly put her property in jeopardy, she decided to sell her New Hampshire house and cancel her contract with the plaintiffs. In June of 1975 she sent the following letter:

> This is to notify you that our home in N. Sandwich is for sale.

> Since no work has been done to the property in over one year and the project has been abandoned by you, our contract of August 12th '72 is hereby cancelled.

> We expect you to vacate the property within 30 days of the reciept [sic] of this notice.

The plaintiffs did not vacate without incident. In their displeasure over defendant's conduct, they vandalized the sap house. Undisputed testimony shows that the following damage was done:

> Trash and things throughout the house, busted lightbulbs in the sockets, and the well was full of garbage. The light wires had been cut from the 200 amp. entrance box. The circuit breakers were missing. The bathroom drains were all plugged. The kitchen drain in the sink was plugged. . . . The telephone wire was cut. . . . The water pipes were cut, and the water had run all over the floor. The stairtreads and the wall were taken up I presume to remove the hot water heater.

The court found that the partial construction of the breezeway and garage and the improvements to the sap house had conferred a net benefit to the defendant. However, relying on *Roundy v. Thatcher*, 49 N.H. 526 (1870), the court denied quantum meruit relief. In *Roundy*, at 529, this court reasoned:

> So if it be expressly agreed that nothing shall be paid until the contract is fully performed, then the law will not, against such express stipulation imply a promise to pay for a part. . . . Upon the same principle, it would seem, that if the contract was to pay in a particular way, as in certain stocks, in land, or other specific articles, the law would not imply a promise, in case of a part performance, to pay in money.

■ "Quantum meruit is a restitutionary remedy intended for use by contracting parties who are in material breach and thus unable to sue 'on contract.' " *Berke v. Griffin*, 116 N.H. 760, 367 A.2d 583 (1976). The obligation thereby sued upon "is one that is created by the law for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent." 1 A. Corbin, Contracts § 19, at 46 (1963). The "reasons of justice" supporting quantum meruit recovery were enunciated in the early case of *Britton v. Turner*, 6 N.H. 481, 492 (1834):

> [W]here the party receives value—takes and uses the materials, or has advantage from the labor, he is liable to pay the reasonable worth of what he has received.

■ While the principle of "unjust enrichment" has thus been invoked by this court from an early date, we are not inclined to depart from our holding in *Roundy v. Thatcher*. The readiness

of the law to create a remedy in favor of a defaulting party must be so limited as not to prejudice the interests of the innocent, nondefaulting party. As Professor Williston has observed:

> To permit a *quantum meruit* recovery in such a case [where the return promise is not for money but for land or chattels] would compel the injured party to pay money for services for which he had bargained to pay only in another medium, and would not only give the defaulter something he would not have been entitled to had he completed his performance but might even give him more than the value of what he had been promised for completed performance.

12 S. Williston, Law of Contracts § 1477, at 259 (3d ed. 1970). In the circumstances of the instant case, the law will not imply a promise by the defendant that she pay in money the value of plaintiffs' services under the contract. *Southern v. Kittredge,* 85 N.H. 307, 158 A. 132 (1932); *Roundy v. Thatcher,* 49 N.H. 526 (1870).

 The improvement of the sap house was not made pursuant to the August 12 written contract, and *Roundy v. Thatcher* thus presents no bar to quantum meruit recovery for the benefit conferred. However, the circumstances under which this building was improved will not permit the imposition of a quasi-contractual obligation on the defendant. Although the defendant had knowledge of the improvements, she could only assume that the plaintiffs would perform their contract and that the sap house would eventually be theirs. The improvements were made solely on the initiative of the plaintiffs in order that they might live in the sap house and avoid the obligation of paying rent for living in the defendant's house. Under these circumstances, it would be unfair to the defendant for the law to impose upon her an obligation to pay for the improvements. *Cf. Moore v. Sterling Warner Indus. Inv. Corp.,* 114 N.H. 520, 524, 323 A.2d 581, 584 (1974).

 "The rule that voluntary acceptance of benefits shows an implied promise to pay therefor, applies only where the party for whom the services are rendered is free to take their benefit or to reject it. If the services are of such nature that he has no choice but to accept them, he cannot be said to accept them voluntarily." 3 W. Page, Law of Contracts § 1516, at 2592 (1920). In the instant case the defendant was not presented with such a free choice, since the benefits would not be hers unless and until the plaintiffs

defaulted on their contract (an event within the plaintiffs' power). We conclude that the defendant is under no quasi-contractual obligation with respect to the improvements to the sap house.

■■ The remaining question is whether the court erred in awarding the plaintiffs specific performance. We note initially that they did not request this remedy and never volunteered that they were ready, willing and able to perform their contractual obligations. Under these circumstances, the court's sua sponte award of equitable relief is of doubtful propriety. *See Enterprises, Inc. v. Cardinale,* 331 Mass. 244, 118 N.E.2d 740 (1954); 4 J. Pomeroy, Equity Jurisprudence § 1407 (5th ed. 1941). Further, the evidence is undisputed that the plaintiffs came to court after having wrongfully converted and maliciously vandalized defendant's property. The trial court erred to the extent that it overlooked the equitable maxim that "he who comes into equity must come with clean hands." 2 J. Pomeroy, *supra* at § 397.

■ However, our objection to equitable relief in this case is founded on even more fundamental considerations. The record is clear that plaintiffs were in material breach of their contract; they had rendered no substantial performance for a period in excess of one year, and the court found that they had "abandoned construction." The defendant therefore was within her rights in electing to cancel the contract. *See* J. Calamari & J. Perillo, Contracts § 157 (1970). By its decree of specific performance, the court extinguished a significant contractual right of the *innocent* party. We have found no authority supporting such a use of equity jurisdiction. We have in fact held the opposite: "[I]t necessarily follows that there cannot be specific performance of a contract justifiably terminated." *Parks v. Company,* 94 N.H. 454, 455, 55 A.2d 312, 313 (1947).

We conclude that plaintiffs are entitled to neither legal nor equitable relief. This result may seem a harsh one. However, it is of the plaintiffs' own making and arises from their decision to devote their time and money to their own ends rather than their contractual obligations.

*Exceptions sustained.*

DOUGLAS, J., did not sit; the others concurred.