W. T. BARNHARDT v. E. W. MORRISON.

(Filed 3 December, 1919.)

1. Wills—Probate—Registration—Statutes—Amendments—Heirs at Law—Purchasers.

Under Rev., 3139, prior to the amendment of chapter 219, Laws 1915, which became effective 9 March, 1915, there was no limitation as to the time when a will could be probated and recorded, the ordinary registration acts having no application to wills, and they becoming effective from the death of the testator, until the enactment of the later law, ordinarily passing the title to devises from that date against all dispositions or conveyances from the heirs to the contrary.

2. Limitation of Actions—Adverse Possession—Remainders.

The statute of limitations against the remaindermen does not begin to run until the falling in of the estate of the life tenant, and his possession is not adverse to the remainderman, within the terms of the statute.

3. Wills— Probate— Registration— Statutes— Prospective Effect— Heirs—Purchasers.

The owner of lands died intestate, her husband taking a life estate as tenant by the courtesy, leaving three children surviving. One of these died without issue surviving, or issue of such, and the other two acquired the life estate of their father and sold the same under proceeding to partition among themselves as tenants in common, unaware that their deceased sister had made a will devising her interest to her husband, who, under the provisions of Rev., 3139, did not have the will probated until after the sale for partition, of which he was not previously aware. *Held*, the statute gave him the legal right to have the will, under the circumstances, probated and recorded, and relate back as of the time of the death of the testatrix, his wife; and there being no evidence that he had misled any one by his declarations, acts, or conduct, there is nothing upon which the equitable principles of estoppel *in pais* would operate to deny his rights against the purchaser at the partition sale.

4. Wills—Statutes—Probate—Heirs at Law—Purchasers—Devisees—Death of Testator—Prospective Effect.

A statute will not be construed to have a retroactive effect to destroy an existing right given under a former statute unless the language thereof is clear and unmistakable; and construing chapter 219, Laws 1915, amendatory of Rev., 3139, under which unlimited time is given to probate and register a will, etc., that such probate and registration "shall not offset the rights of innocent purchasers for value from the heirs at law of the testator when such purchase is made more than two years after the death of such testator," etc., it is *Held*, that the amendment is prospective in effect.

5. Same—Limitation of Actions—Inadequate Time—Legislative Powers—Actions—Constitutional Law.

Chapter 219, Laws 1915, amendatory of Rev., 3139, fixes the time as two years within which a will must be probated and recorded to affect the rights of purchasers from the heirs at law, and this limitation being exclu-

sively within the authority of the Legislature to make, except where the time is manifestly inadequate, etc., it is held that the, Laws of 1915, in order to give a devisee time to probate the will, allows two years in which to probate from the time of its enforcement.

CLARK, C. J., dissenting.

APPEAL by defendant from *Harding, J.*, at April Term, 1919, of CABARRUS.

This is a proceeding for the partition of lands, in which the plaintiff contends that he is the owner of a one-third interest as the devisee of his wife, Margaret Barnhardt, and that the defendant is the owner of a two-thirds interest as a purchaser from the two sisters of Margaret, Minnie, and Lula.

Margaret Ellis, Sr., was originally the owner of the land. She died intestate, leaving her surviving her husband, D. R. Ellis, who had a life estate in the land as tenant by the curtesy, and three daughters, as her only heirs, Margaret, who married the plaintiff, Minnie, unmarried, and Lula, who married J. P. Gibbs.

Mrs. Gibbs and Minnie Ellis bought the life estate of their father in 1895. Margaret died in 1898, leaving a will in which she devised her interest in the land to the plaintiff, but this will was not probated until 12 February, 1917. She left no children.

Neither of the, sisters nor the defendant knew of this will, and after the death of Margaret the sisters divided the land, and in 1908 sold the same, including the life estate, to the defendant, who has been in possession since that time.

D. R. Ellis, the life tenant, died 11 April, 1917.

The plaintiff lived in ten or twelve miles of the land, but there is no evidence that he knew of the division of the lands or of the sale to the defendant.

This proceeding was commenced 14 September, 1917.

His Honor held that the plaintiff was the owner of one-third of the land, and rendered judgment accordingly, and the defendant excepted and appealed, contending that he is the sole owner of the land.

*Maness & Armfield and A. H. Price for plaintiff.*
*L. T. Hartsell and J. L. Crowell for defendant.*

ALLEN, J. Under the statute in force when the testatrix of the plaintiff died (Rev., 3139), and up to 1915, covering the period when the defendant bought the land in controversy, there was no limitation as to the time when a will could be probated and recorded (*Steadman v. Steadman*, 143 N. C., 345), the ordinary registration acts had no application to wills (*Harris v. Lumber Co.*, 147 N. C., 631; *Bell v. Couch*, 132

N. C., 346), and when probated and recorded, without regard to time, the will became effective from the death of the testator, passing the title from that date, and "avoiding all dispositions or conveyances from the heirs contrary to the provisions of the will," unless those claiming against the will were "protected by the statute of limitations or some recognized equitable principle." *Cooley v. Lee,* 170 N. C., 22.

In this case there is no statute of limitations which will perfect the title of the defendant by adverse possession, because he was the owner of the life estate of D. R. Ellis, who did not die until 11 April, 1917, and the possession of the life tenant is not adverse to the remainderman (*Norcum v. Savage,* 140 N. C., 474); nor can the defendant invoke the equitable principles of an estoppel *in pais,* upon which he relies, upon the evidence in this record.

"This estoppel arises when any one, by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist, and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts. . . . In order to constitute an equitable estoppel, there must exist a false representation or concealment of material facts, with a knowledge, actual or constructive, of the truth; the other party must have been without such knowledge, or, having the means of knowledge of the real facts, must not have been culpably negligent in informing himself; it must have been intended or expected that the representation or concealment should be acted upon, and the party asserting the estoppel must have reasonably relied on it or acted upon it to his prejudice. 16 Cyc., 722; Eaton's Equity, p. 169. It is a species of fraud which forms the basis of the doctrine, and to prevent its consummation is its object." *Boddie v. Bond,* 154 N. C., 365.

"Mere silence will not work an estoppel. There must be some other element connected with the transaction and the silence to prevent a person from asserting his rights or claim. And so, in the many and varied situations in which this question can be raised, it is generally affirmed that in order to work an estoppel the silence must be under such circumstances that there are both a specific opportunity, and a real or apparent duty, to speak." 10 R. C. L., 692.

"Undoubtedly mere silence may sometimes be found an estoppel, but it must be when there is a duty and opportunity to speak, when silence either is or operates as a fraud to the consciousness of the party who does not speak, and when he knows or ought to know that some one is relying upon his silence and will be injured by that silence. (*Viele v. Judson,* 82 N. Y., 40.) In other words, the omission to speak must be, relatively to the party harmed, an actual or constructive fraud. (Herman on Estoppels, sec. 954)." *Collier v. Miller et al.,* 137 N. Y., 339.

There is no evidence that the plaintiff knew of the partition of the lands among the surviving sisters, or of the purchase by the defendant, nor is there any evidence of any act or declaration of the plaintiff calculated to mislead the defendant. He was merely silent, and withheld the will from probate in the exercise of a legal right, which gave him unlimited time within which to probate and record the will, and he was not required to speak.

The defendant says, however, he is protected by the amendment to section 3139 of the Revisal, which became effective 9 March, 1915 (chapter 219, Laws 1915), and is as follows: *"Provided,* that the probate and registration of any last will and testament shall not affect the rights of innocent purchasers for value from the heirs at law of the testator when such purchase is made more than two years after the death of such testator, unless the said last will and testament has been fraudulently withheld from probate."

The contention of the defendant is that this amendment is retrospective in its operation, and as he bought from the heirs more than two years after the death of the testatrix, the amendatory statute had the effect of establishing his title against the plaintiff at the time of its enactment, or at most, the plaintiff could only have a reasonable time to probate the will, and that a delay until 12 February, 1917, when the will was probated, twenty-three months and three days after the adoption of the amendment, was unreasonable.

There is language in the proviso, such as "any last will," "is made," "has been," which give indication that it was intended to have a retroactive effect, but this construction ought not to be adopted, and thereby summarily destroy an existing right unless the language is clear and unmistakable.

"There are certain principles which have been adhered to with great strictness by the courts in relation to the construction of statutes, as to whether they are or are not retroactive in their effect. The presumption is very strong that a statute was not meant to act retrospectively, and it ought never to receive such a construction if it is susceptible of any other. It ought not to receive such a construction unless the words used are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intention of the Legislature cannot be otherwise satisfied." *United States v. Fidelity & Guaranty Co.,* 209 U. S., 306.

"A statute, upon obvious principles of convenience and justice, must in general be construed as prospective in its operation. It must be construed as intended to regulate the future conduct and rights of persons, and not apply to past transactions. This elementary rule of construction may be changed by the Legislature, but such intention must be

sufficiently expressed by the statute." *Merwin v. Ballard,* 66 N. C., 399, approved in *Waddill v. Masten,* 172 N. C., 585.

A great number of cases are cited and commented on in support of the same principles in the notes. 4 A. and E. Ann. cases, 166; 1912 A. Ann. cases, 1041.

Again, if we should adopt the view of the defendant that the Legislature intended the proviso to operate retrospectively, as he had bought from the heirs more than two years after the death of the testatrix, he was at once protected against the claim of the plaintiff, and we would run counter to the principle "that while the statute of limitations affects the remedy only and takes away no vested rights, it is not competent for the Legislature to cut off the remedy entirely, as this would amount to a denial of justice." *Tipton v. Smythe,* 8 A. and E., Ann. cases, 525, and note, in which decisions from thirty-one States, and from the Supreme Court of the United States are cited in support of the text.

"It may be properly conceded that all statutes of limitation must proceed on the idea that the party has full opportunity afforded him to try his rights in the courts. A statute could not bar the existing rights of claimants without affording this opportunity; if it should attempt to do so, it would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever be the purport of its provisions." *Wilson v. Iseminger,* 185 U. S., 55.

It is our duty, if possible, to avoid attributing to the General Assembly such an attempt to exercise arbitrary power and to deprive the plaintiff of his right without a hearing.

Mr. Cooley states the rule clearly and accurately as follows: "The duty of the Court to uphold a statute when the conflict between it and the Constitution is not clear, and the implication which must always exist that no violation has been intended by the Legislature, may require it in some cases, where the meaning of the Constitution is not in doubt, to lean in favor of such a construction of the statute as might not at first view seem most obvious and natural. . . . The rule upon this subject is thus stated by the Supreme Court of Illinois: 'Whenever an act of the Legislature can be so construed and applied as to avoid conflict with the Constitution and give it the force of law, such construction will be adopted by the Courts. Therefore, acts of the Legislature, in terms retrospective, and which, literally interpreted, would invalidate and destroy vested rights, are upheld by giving them prospective operation only; for, applied to, and operating upon, future acts and transactions only, they are rules of property under and subject to which the citizen acquires property rights, and are obnoxious to no constitutional limitation; but as retractive laws, they reach to and destroy *existing* rights, through force of the legislative will, without a hearing or judgment of law.'" Codley Const. Lim., 8th Ed., 255.

We therefore conclude that it was not the intention of the Legislature that the proviso should operate retrospectively, and deprive the plaintiff of the right to probate his will as of the time of its enactment, and if it operates prospectively, there is no time mentioned in the proviso which can be a limitation on the right of the plaintiff except the period of two years, and the will was probated within that time.

There is no authority in the Court to add the provision to the statute that as against those who had already bought from the heirs more than two years, the will must be probated within a reasonable time, and then fix the time, because the statute is silent on this question, and what is a reasonable time is primarily legislative and not judicial, subject only to the power of the Courts, not to shorten a time limited by the Legislature, but to say whether a particular time is reasonable or unreasonable.

It is essential that statutes barring a right "allow a reasonable time after they take effect for the commencement of suits upon existing causes of action; though what shall be considered a reasonable time must be settled by the judgment of the Legislature, and the Courts will not inquire into the wisdom of the decision in establishing the period of legal bar, unless the time allowed is manifestly so insufficient that the statute becomes a denial of justice."   Cooley Const. Lim., 523-4.

"The only restriction upon the Legislature in the enactment of statutes of limitation is that a reasonable time be allowed for suits upon causes of action theretofore existing, . . . the reasonableness naturally and primarily is with the Legislature." *Gilbert v. Ackerman,* 159 N. Y., 118.

"When the Legislature, in fixing such time (to bring suit), makes it so short that the right to sue is practically denied, Courts will declare such time unreasonable, and refuse to enforce the law.   But Courts cannot go further and fix a time different from that fixed by the Legislature within which suits may be brought.   And if the Legislature has failed to fix any time, the Courts cannot, in a given case, supply this legislative lapse.   The fixing of the time within which to bring suit, under such circumstances, is purely a legislative function.   It is not within the power of the judiciary." *Adams and Freese Co. v. Kenoyer,* 16 L. R. A. (N. S.), 683.

"It is essential that such statutes allow a reasonable time after they take effect for the commencement of suits upon existing causes of action; though what shall be considered a reasonable time must be settled by the judgment of the Legislature, and the Courts will not inquire into the wisdom of its decision in establishing the period of legal bar, unless the time allowed is manifestly so insufficient that the statute becomes a denial of justice.   Cooley, Const. Lim., 451." *Wilson v. Iseminger,* 185 U. S., 55.

"The Legislature is the primary judge as to whether the time allowed by a statute of limitations is reasonable. When the Legislature makes the time so short that the right to sue is practically denied, Courts will declare such time unreasonable, but they cannot go further and fix a different time; neither can they, if the Legislature fails to fix any time, supply this legislative lapse." 17 R. C. L., 677.

We therefore conclude that the proviso is prospective in its operation, and that the plaintiff had two years from its enactment to probate and record his will, and it follows that the judgment must be affirmed.

The distinction between this case and *Matthews v. Peterson,* 150 N. C., 132, which was approved in *Fisher v. Ballard,* 164 N. C., 329, is that in the *Peterson case* five months elapsed between the enactment of the statute and the time it became operative, and it was held this time could be considered, and that it afforded reasonable opportunity for the assertion of the right, which feature is not present in the statute now before us.

No error.

CLARK, C. J., dissenting: Margaret Barnhardt died in 1898, seized of an undivided one-third interest in a tract of land in which her sisters, Minnie Ellis and Loula Gibbs, were the other tenants in common. The land was subject to the life interest of their father, who died 11 April, 1917. This life interest had been bought in by her sisters, Mrs. Gibbs and Minnie Ellis, in 1895. Margaret died in 1898, leaving no children, and having had none. The husband was, therefore, not entitled to tenancy by the curtesy, and there being no notice of a will, the two surviving sisters, who were her heirs at law in 1908, sold the land, including the life estate, to the defendant, an innocent purchaser for value, who has been in possession since that time.

On 9 March, 1915, the General Assembly enacted chapter 219, Laws 1915, which is as follows: *"Provided,* that the probate and registration of any last will and testament shall not affect the rights of innocent purchasers for value from the heirs at law of the testator, when such purchase is made more than two years after death of the testator, unless said last will and testament has been fraudulently withheld from probate." On 12 February, 1917, twenty-three months and three days after the enactment of the statute of 1915 above recited, the plaintiff, the husband of Margaret Barnhardt, probated her will, which purports to devise to him her interest in said land.

It is true that the purchaser is not protected by his adverse possession since 1908, because the statute did not run until the falling in of the life estate, which he had bought as a part of his title. But after the passage of the statute of 1915 it was incumbent upon the plaintiff, claiming

under the will of Margaret Barnhardt, to probate the same within a reasonable time, for the two years therein allowed had already elapsed. The Legislature being the judge of what is a reasonable time, a statute of limitation prescribed by it is conclusively a reasonable time, and binding on the Courts. The only exception is that where the statute shortens the time the Courts hold that the party who would be barred is entitled to a reasonable time after the passage of the act in which to bring his action, but it has never been held that he must have the full time allowed by the statute. In this case, there is no exception in the statute, and the plaintiff, under the letter of the act, can assert no title under a will not probated within two years after the death of the testator.

He was fixed by law with notice of the statute, and it was incumbent upon him within a reasonable time to take himself out of the bar put upon his claim, but such reasonable time was not two years. In *Matthews v. Sallie Peterson,* 150 N. C., 132, it was held that the administrator did not move within a reasonable time when he waited for more than a year after the passage of the statute shortening the limitation. In *Matthews v. Hannah Peterson, ib.,* 134, the Court held that in such case, if the action was brought within one year, it would be within a reasonable time.

These two cases hold: "When a limitation of time for bringing an action is shortened by statute, there must be a reasonable time, notwithstanding the statute in which to bring the action, but this by no means requires that the party who would be barred by the statute is entitled to the full time allowed by the statute in which to bring his action."

The defendant bought, in good faith, without notice, and for value, from the heirs at law, who, by this statute, it was intended should be protected by. the failure to probate the will within two years after the death of the testator. There being no exception in the statute, to prevent any hardship where the two years has already expired, or less than that time remains, the Courts hold that in such case, notwithstanding the letter of the statute, a devisee shall have a reasonable time. He is not entitled, however, to two years from the passage of the act, but two years from the death of the testator and a reasonable time for him in which to probate this will was less than the twenty-three months and three days after passage of the act, and the defendant ought not to be disturbed in his possession. This action was not brought by the plaintiff till 14 September, 1917, nineteen years after the death of his wife, during all of which time he had withheld the will from probate.