SOUTHWESTERN GAS & ELECTRIC COMPANY *v.* DENNEY.

4-3868

Opinion delivered May 13, 1935.

*Festus O. Butt* and *Karl Greenhaw,* for appellant.
*Sullins & Perkins,* for appellees.

BAKER, J. On or about August 12, 1934, Hobart Anglin, a boy nearly sixteen years of age, was injured by coming into contact with a wire suspended from one of the high tension wires of the defendant company, the appellant here. The accident occurred on the roadside, or in close proximity, at least, to a road beside which the "high lines" of the defendant company had been constructed and were maintained, in Carroll County, near Kings River Bridge.

Hobart Anglin and two of his boy companions, Elbert Walker and Harold Rhoden, had been swimming one Sunday afternoon and passing near the place of the accident they saw a wire suspended or hanging from one of the defendant's wires. The lower end of the suspended wire was coiled about a stone or rock and the upper end curved or hooked over one of the high tension lines so that the rock so suspended was just off the edge of the road. Some of the boys threw rocks or stones at the suspended stone.

Hobart Anglin says that, as he passed under or near the rock suspended in the coil of the foreign or hanging wire, he involuntarily stuck out or threw up his hand and experienced an extreme shock, such as to render him practically unconscious for a considerable length of time. His hand and his forearm were burned and his great toes on each foot were severely burned to the extent that the cushion on the under part of the toes was practically destroyed. Other injuries were alleged.

The complaints filed by Hobart Anglin, by his mother, Lovey May Denney, his next friend, and by his mother, alleged that he was fourteen years old; that the defendant's high line of three wires carried a current of 33,000 volts each, and, at a point east of Kings River Bridge, lines run adjacent to the old highway in an easterly and westerly direction, the highway curving slightly at such point, and that said high lines at this curve are parallel with and in the approximate direction of the north side of the highway, and that on the wire nearest the road there was attached a foreign wire to the lower end of which was tied a rock that hung within a short distance of the north side of said highway; that the foreign wire was in plain view and easily to be seen from the road; that the defendant was negligent in failing to patrol its lines and in failing to discover and remove such foreign wire; that about 4 or 5 p. m., August 12, 1934, while the plaintiff was walking along curve on said highway he was passing said wire and without warning a powerful current of electricity jumped or arced from said wire and struck the plaintiff, passing through his body and knocking him down, and set fire to the grass on the highway, all without fault on the part of plaintiff, but by reason of the negligence of the defendant.

According to the view we have of this case, it is unnecessary at this time to set forth the extent of the injuries as pleaded.

The plaintiff sought to recover $2,999 damages and the mother sought a recovery in a like sum.

A demurrer was filed to the complaint and overruled, and defendant answered denying each and every material allegation of the complaint.

Although separate suits were filed by the two plaintiffs the causes were consolidated and tried together. Hobart Anglin recovered the sum of $2,000 and Mrs. Denney the sum of $500, from which appeal has been lodged in this court.

Appellants have argued most seriously several questions for our consideration. Among these are the question of liability under the facts pleaded and concerning which evidence is offered in proof, also the proposition of

error in instructions; the matter of improper argument on behalf of counsel for appellees, the right of the mother of Hobart Anglin to sue and recover for any losses she may have suffered by reason of the loss of services of her son and attendant expenses by reason of her son's injuries.

It is not expedient, as we view the issues in this case, that we set forth the testimony of the several witnesses and discuss the proposition of liability. The probative value of the testimony offered by the plaintiffs and defendant, respectively, make questions for the determination by the jury, as there were propositions somewhat sharply in dispute.

An examination of the several instructions discloses no substantial or prejudicial error in the submission of the case to the jury, except instruction No. 3, given by the court at plaintiff's request. This instruction reads as follows: "I charge you that reasonable care or ordinary care is a degree of care varying with the circumstances of each such case, and which in the case of electrical wires carrying a dangerous current of electricity, requires the exercise of a high degree of care to keep them properly insulated and suspended so as not to endanger lives."

Defendant objected to this instruction "because there is no allegation in complaint of failure to insulate as ground of negligence, and the law does not require insulation of high tension high lines." The giving of this instruction was error, and the objection made to it by the defendant, when given, is sufficiently specific to call the court's attention to the vice in it.

There is no allegation in the complaint that the lines were not insulated, nor is it alleged in the complaint that it was a matter of negligence to use uninsulated wires in the carrying of high voltage electric current over these high tension lines.

The instruction injects into the case, as an act of negligence, the failure to insulate. Special attention is directed to this purported lack of ordinary care. It is axiomatic that ordinary care is a relative term varying in degree according to whatever may be the peculiar cir-

cumstances or conditions. Ordinary care must be recognized as the degree of caution commensurate with the threat or menace present. That is probably what the trial court meant in instruction No. 3, the language of which, however, may be construed to mean that more than ordinary care was required in this case, for it says, "that the ordinary care requires the exercise of a high degree of care to keep them (the high lines) properly insulated and suspended so as not to endanger life."

The evil of this instruction is made more flagrant in consideration of the closing argument of the attorney for the appellee when he said: "The court says they are required to use a high degree of care; they are operating a dangerous instrument, worse than a machine gun, worse than anything you could scatter out over the country. They are required to use a great deal of care to see that nobody gets hurt. They didn't even have the wires insulated."

Objections were made to this part of the argument and the court sustained this objection. At this point the attorney made this announcement: "Withdrawn. I thought the testimony showed it. The jury will know," upon which the defendant objected to counsel's intimation that "the jury will know." The court overruled that objection by counsel for defendant, and attorney for plaintiffs continued: "I still thought it was; some one swore it was not insulated, and put on rubber gloves, Hays or some one."

It must be observed by the most casual reader that this persistent argument of counsel that the jury's attention must have been fixed upon this instruction and the effect of it. When counsel for appellees, in his qualified withdrawal of the improper argument, still insisted "the jury will know," objection to the remark was urged. The pertinent question is, "what will the jury know?" The answer must be, that the failure to insulate the wires was actionable negligence. In overruling the objection made to this expression by appellees' counsel, emphasis was given to the error.

The error of this instruction was not cured by any other instruction given. It was not corrected or with-

drawn. The instruction was abstract, not applicable to the issues. *J. C. Engleman, Inc.* v. *Briscoe,* 172 Ark. 1088, 1093, 291 S. W. 795.

Since the case must be reversed on account of erroneous instruction No. 3, it is not necessary that we should discuss the alleged errors arising out of argument of counsel as these perhaps will not occur upon a new trial.

The right of the mother, Mrs. Lovey May Denney, to sue is questioned. Lovey May Denney, the mother of Hobart Anglin, filed her separate complaint. In that complaint she pleaded that she was awarded a decree of divorce from George Anglin and that by the decree she was awarded care, custody and control of their children; that from the date of the birth of Hobart Anglin she had provided for, reared, educated and taken care of him. She pleads further that George Anglin, her former husband, had resided at Blytheville, Arkansas, and at Springdale, Arkansas; that he had absented himself from the State for a period exceeding seven years; the intendment being to plead facts from which the presumption of death would be deducible. She had had care and custody of Hobart from infancy, and was charged with his support and maintenance.

Whatever duty the father may have owed he has not performed. He has never made any claim to the care and custody of the child; has done nothing for his support and maintenance, and, so far as this record discloses, would under no ordinary conditions be awarded the care and custody of Hobart.

The common-law rule, to the effect that the father may obtain custody of his children; that he is entitled to their services or earnings, does not at this time obtain in this State. That rule was perhaps never enforced with the same degree of strictness as in England.

Act 257 of the Acts of 1921, operates as a repeal of the common-law rule, and by it the father and mother, while living together as husband and wife, are made joint natural guardians of their unmarried minor children, with equal powers, rights, and duties to have custody and care of their person, education, and estates, etc. Said act also provides that the surviving parent of any

unmarried child might, by last will, duly executed, dispose of the custody of said child during its minority to some proper person. Section 3 of the act provided that "where the husband and wife are living apart, there may be an adjudication of the court as to their power, rights and duties with respect to the persons and property of their unmarried minor children. In such cases there will be no preference between the husband and wife, but the welfare of the child must be considered first in determining the custody of such child, or the control of its property."

It may be said that ordinarily in an action by a parent for injury to a minor child, damages may be recovered, for the loss of services and for the expense of care and cure.

In many instances courts have upheld the right of the abandoned mother having custody of a minor child to receive the value of its services, and therefore the consequent right to sue, on account of personal injuries of the child, for expenses incident to such injury, even in the absence of legislation. Spencer, Domestic Relations, 465, § 513.

The same right is held to exist in favor of the stepfather or other person actually standing *in loco parentis* toward the injured minor. Also: "But by the weight of modern authority, as well as by statute in many jurisdictions, the mother has such right of action where, by reason of the father's death, desertion, or other cause, the right to the custody and services of the child has devolved upon her." 46 C. J. 1296.

"The strong modern tendency to equalize the rights of the two parents as to their children have led to the enactment of statutes in several of the American States by which the father and mother are declared to be joint guardians of their children, with equal rights of custody and control, this right to become sole in the survivor when either dies. * * *" 20 R. C. L. 634, § 39.

"But, on the death of the father, it is generally held that the widowed mother becomes the legal parent and guardian of the minor children, with substantially the same rights which the father had during his lifetime.

* * * And if a man abandons his wife and children, he is held to have forfeited his rights, or transferred them to the mother in whose care the children remain. The widowed or abandoned mother becomes therefore the natural guardian of her children, and can maintain her right to their custody, if necessary by suit. She succeeds also to the parental rights of property as to the children, and can sue for their earnings, or for diminution of her maternal rights by tortious injury to her children.''

The above statements are quoted from 20 R. C. L. 632 and are supported by much eminent authority as shown by citations there set out.

It must appear therefore that in this case, under the facts stated in the complaint, the mother having the custody of the child, charged with the duty and obligation of its maintenance and support, and entitled to the services of the child, she had the right to file and maintain the suit. She was chargeable for its ''care and cure'' and, as to matters relating to expenses incurred by her on behalf of the child, on account of his injuries, and for loss or diminution of services till restored to health or till his majority, she was the real party in interest.

For the error indicated the judgment is reversed, and cause remanded for a new trial.