270 S.E.2d 482 (1980)
301 N.C. 108
Brian FLIPPIN, by his Guardian Ad Litem, Melvin F. Wright, Jr., and Sandra Flippin
v.
Dr. William Eric JARRELL.
No. 102.
Supreme Court of North Carolina.
October 7, 1980.
*484 White & Crumpler by Fred G. Crumpler, Jr., Harrell Powell, Jr., Edward L. Powell, and G. Edgar Parker, Winston-Salem, for plaintiff.
Womble, Carlyle, Sandridge & Rice by H. Grady Barnhill and William C. Raper, Winston-Salem, for defendant.
EXUM, Justice.
This appeal presents two questions. First, whether the professional malpractice statute of limitations found in G.S. 1-15(c)[4] can be constitutionally applied to bar the plaintiff's claim under the facts of this case. We hold, for reasons given, that it cannot. Second, whether plaintiff, the child's divorced mother, has standing to bring this action for medical expenses and loss of the child's services allegedly resulting from injury to the child caused by defendant's negligence.[5] We hold that the mother has standing.

I
Plaintiff alleges that Brian Flippin, her minor son, had a condition at birth known as phenylketonuria (PKU), an inborn or inherited metabolism defect which if undetected and untreated usually results in mental retardation. Defendant physician, a pediatrician who attended Brian at birth, allegedly negligently failed to diagnose and treat this condition. Brian was later diagnosed as being mentally retarded due to PKU. Defendant in part answered plaintiff's claim for medical expenses and loss of services by pleading the statute of limitations. After some discovery proceedings, defendant moved for summary judgment upon that ground and also upon the ground that only the father had standing to bring this claim. Judge Walker denied the motion; but the Court of Appeals reversed, holding that the claim was barred under both "the one-year rule and the four-year rule" of G.S. 1-15(c). We reverse the Court of Appeals.
Discovery proceedings and the pleadings show the following chronology of events giving rise to this claim: The child Brian was born 11 March 1972. Defendant last rendered professional services to Brian on 8 July 1972. The child's mother, the plaintiff, became aware on or about 14 October 1975 that "something was wrong" with Brian and took him to the Winston-Salem Child Guidance Clinic for examination. In February, 1976, the clinic concluded that Brian was only "one-half as mentally alert as children of his age." On 22 November 1976 Brian's condition was definitively diagnosed as PKU by physicians at Duke University Medical Center. Plaintiff filed this action for medical expenses and loss of the child's services on 19 December 1977.
Until 1 January 1977 the plaintiff's action was governed by Chapter 1157 of the 1971 Session Laws. This chapter, codified as G.S. 1-15(b) (1977 Cum.Supp.), provided in pertinent part that a cause of action "having as an essential element bodily injury. . . not readily apparent to the claimant at the time of its origin, is deemed to have accrued at the time the injury was discovered by the claimant, or ought reasonably to have been discovered by him, whichever first occurs; provided that in such cases the period shall not exceed 10 years from the last act of the defendant giving rise to the claim for relief." Statutes of limitations begin to run when the claim against which they are asserted accrues. G.S. 1-15(a). There is a three-year period of limitation for claims arising out of "injury to the person." G.S. 1-52(5). Thus the effect of Chapter 1157 was to provide a three-year period of limitation from the time discovery of the injury was, or should have been, made provided the action was *485 brought within ten years from the last act of the defendant giving rise to the claim.[6]
On a motion for summary judgment, the court is not authorized "to decide an issue of fact, but rather to determine whether a genuine issue of fact exists." Caldwell v. Deese, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975). Further, "all inferences of fact from the proofs proffered at the hearing must be drawn against the movant and in favor of the party opposing the motion." Id., quoting 6 Moore's Federal Practice § 56.15[3] at 2337 (2d Ed. 1971). When plaintiff discovered, or should have discovered, her child's "injury" may well be a question of fact which we cannot now resolve. For purposes of defendant's summary judgment motion we must assume that this date was 22 November 1976, when the child's condition was first definitively diagnosed. Thus, under G.S. 1-15(b) the plaintiff would have had three years from 22 November 1976 in which to file her action.
On 12 May 1976, however, the General Assembly ratified Chapter 977 of the 1975 Session Laws to become effective 1 January 1977. This act again amended G.S. 1-15 so as to provide for a special statute of limitations in professional malpractice cases. It added subsection (c) to G.S. 1-15 which provides:
"(c) Except where otherwise provided by statute, a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action : Provided that whenever there is bodily injury to the person, economic or monetary loss, or a defect in or damage to property which originates under circumstances making the injury, loss, defect or damage not readily apparent to the claimant at the time of its origin, and the injury, loss, defect or damage is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made: Provided nothing herein shall be construed to reduce the statute of limitation in any such case below three years. Provided further, that in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action: Provided further, that where damages are sought by reason of a foreign object, which has no therapeutic or diagnostic purpose or effect, having been left in the body, a person seeking damages for malpractice may commence an action therefor within one year after discovery thereof as hereinabove provided, but in no event may the action be commenced more than 10 years from the last act of the defendant giving rise to the cause of action." (Emphasis supplied.)
This statute significantly altered the law of limitations applicable to professional malpractice actions. It changed the time of accrual of such actions from the date of discovery of injury to the date of defendant's last act which gave rise to the action. Stanley v. Brown, 43 N.C.App. 503, 259 S.E.2d 408 (1979), disc. rev. denied, 299 N.C. 332, 265 S.E.2d 397 (1980). Also, for latent claims discovered two or more years after the defendant's last negligent act, except those involving a non-therapeutic and non-diagnostic "foreign object" left in the body, the statute established a four-year period of limitation measured from its newly defined time of accrual, i. e., from defendant's last act which gave rise to the claim. The period of limitation in such claims which involve a non-therapeutic and non-diagnostic "foreign object" remained ten years.[7]
*486 By its terms Chapter 977 is applicable to this litigation. Section 8 thereof provides, "This act shall not apply to pending litigation." Section 9 provides, in addition, that the portion of the chapter under discussion "shall become effective on January 1, 1977, and shall apply to actions filed on or after that date." Since this litigation was not pending on and was filed after the effective date of Chapter 977, the statute, by its terms, purportedly applies. Stanley v. Brown, supra, 43 N.C.App. 503, 259 S.E.2d 408. See, e. g., Spencer v. McDowell Motor Co., 236 N.C. 239, 72 S.E.2d 598 (1952).
When plaintiff discovered the "injury" on 22 November 1976 former G.S. 1-15(b) was in effect. Under it plaintiff would have had three years from the date of discovery in which to bring her action. Thirty-nine days later on 1 January 1977, G.S. 1-15(c), applying specifically to professional malpractice actions, Stanley v. Brown, supra, 43 N.C.App. 503, 259 S.E.2d 408, became effective. If this new statute can within the limits of the Due Process Clause of the Fourteenth Amendment of the United States Constitution be applied to this case, then plaintiff's action for medical expenses and loss of services is barred by it because the action has been brought more than four years from the date it accrued under the new statute and, further, is not a "foreign object" type claim.

II
The first question thus presented is whether the new professional malpractice four-year period of limitations contained in G.S. 1-15(c) can constitutionally be applied so as to bar plaintiff's action for medical expenses and loss of her child's services.
It is well established that the legislature may, without affecting vested interests, shorten or extend a pre-existing period of limitation. Wilson v. Iseminger, 185 U.S. 55, 22 S.Ct. 573, 46 L.Ed. 804 (1902); Turner v. New York, 168 U.S. 90, 18 S.Ct. 38, 42 L.Ed. 392 (1897); Graves v. Howard, 159 N.C. 594, 75 S.E. 998 (1912). If the new statute shortens the period, however, it must, to comport with due process, provide a reasonable time for filing actions which have accrued but which have not been filed when the new statute takes effect. Atchafalaya Land Co. v. F. B. Williams Cypress Co., 258 U.S. 190, 42 S.Ct. 284, 66 L.Ed. 559 (1922); Wheeler v. Jackson, 137 U.S. 245, 11 S.Ct. 76, 34 L.Ed. 659 (1890); Saranac Land Company v. Comptroller, 177 U.S. 318, 20 S.Ct. 642, 44 L.Ed.2d 786 (1899); Turner v. New York, supra, 168 U.S. 90, 18 S.Ct. 38, 42 L.Ed. 392; Koshkonong v. Burton, 104 U.S. 668, 26 L.Ed. 886 (1881); Terry v. Anderson, 95 U.S. 628, 24 L.Ed. 365 (1877); Barnhardt v. Morrison, 178 N.C. 563, 101 S.E. 218 (1919). In Barnhardt, supra, 178 N.C. at 568, 101 S.E. at 221, this Court said:
"It is essential that statutes barring a right `allow a reasonable time after they take effect for the commencement of suits upon existing causes of action; though what shall be considered a reasonable time must be settled by the judgment of the Legislature, and the Courts will not inquire into the wisdom of its decision in establishing the period of legal bar, unless the time allowed is manifestly so insufficient that the statute becomes a denial of justice.' Cooley, Const. Lim., 451."
Chapter 977 provided almost eight months between its ratification date (12 May 1976) and its effective date (1 January 1977). At least two North Carolina cases support the proposition that this is a reasonable time. Matthews v. Peterson, 150 N.C. 132, 63 S.E. 722 (1909) (five months between ratification and effectuation held reasonable); Clodfelter v. Bates, 44 N.C.App. 107, 260 S.E.2d 672 (1979), disc. rev. denied, 299 N.C. 329, 265 S.E.2d 394 (1980) (plaintiff's action barred by G.S. 1-15(c) when plaintiff discovered injury more than seven months before statute's effective date); but see Blevins v. Utilities, Inc., 209 N.C. 683, 184 S.E. 517 (1936) (six-month grace period deemed unreasonable).
The question before us, however, is not whether the statutory grace period on its face is reasonable. Plaintiff's claim under the law as it existed before 1 January *487 1977 did not accrue until 22 November 1976. Thus plaintiff was denied the benefit of most of the grace period to which, had she discovered her claim earlier, she would have been entitled. The new statute, G.S. 1-15(c), as we have said, not only shortened the period of limitation from ten to four years; it also changed the time of accrual of actions and, consequently, the time from which the period of limitation begins to run, from the time of discovery to the time of defendant's last act. The new statute, if properly applicable, effectively barred plaintiff's action immediately upon the statute's taking effect. As applied to plaintiff, the statute provided her only thirty-nine days in which to file her claim after she discovered it.
The question, then, before us is whether the statute as applied to plaintiff afforded to her a reasonable time within which to bring her action. We conclude that it did not because the thirty-nine day period is constitutionally insufficient and unreasonable.
Courts ordinarily will not inquire into the wisdom of a legislative determination as to the grace period to be afforded unless the time allowed is so insufficient as to constitute a denial of justice. Wilson v. Iseminger, supra, 185 U.S. 55, 22 S.Ct. 573, 46 L.Ed. 804; Barnhardt v. Morrison, supra, 178 N.C. 563, 101 S.E. 218. In other words, a grace period is unreasonable only if the time afforded for bringing suit on existing causes of action is so short that the right to sue is "practically denied." Id. at 568, 101 S.E.2d at 221, quoting Adams & Freese Co. v. Kenoyer, 17 N.D. 302, 116 N.W. 98 (1908). See generally 51 Am.Jur.2d Limitation of Actions § 37 (1970). Furthermore, the function of the judiciary is limited to determining whether a particular time is reasonable or unreasonable. "Courts cannot go further and fix a time different from that fixed by the Legislature within which suits may be brought .... The fixing of the time within which to bring suit, under such circumstances ... is not within the power of the judiciary." Barnhardt v. Morrison, supra, 178 N.C. 563, 568, 101 S.E. 218, 221, quoting Adams & Freese Co. v. Kenoya, supra, 17 N.D. 302, 116 N.W. 98.
We cannot find, nor have we been referred to, any North Carolina case which has approved a grace period shorter than five months. Such a period was approved in Matthews v. Peterson, supra, 150 N.C. 132, 63 S.E. 722. Indeed, except for cases refusing to apply statutes which provided no grace period at all, Trust Co. v. Redwine, 204 N.C. 125, 167 S.E. 687 (1933); Barnhardt v. Morrison, supra, 178 N.C. 563, 101 S.E. 218, our cases do not appear to have considered a period so short as thirty-nine days.
Cases from other jurisdictions, however, strongly support our conclusion that thirty-nine days is an unreasonably short period and, therefore, constitutionally insufficient.[8]
The recent Cutsinger decision in Illinois, supra, n. 8, involved a medical malpractice action brought under a statute similar to G.S. 1-15(c). In Cutsinger, the defendant physician allegedly negligently left a *488 sponge in the plaintiff's abdominal cavity while performing a gall bladder operation in 1969. The Illinois statute provided that such claims had to be brought within two years after the plaintiff knew or should have known of the injury, but that in no event could an action be maintained more than ten years from defendant's last negligent act. Effective 19 September 1976, however, the Illinois statute was amended so that the ten-year period was reduced to four years. There was evidence supporting a discovery date of 4 September 1976, but plaintiff in Cutsinger did not file her action until 13 January 1977, some seven years after the operation and approximately five months after the amendment. The plaintiff argued that she was denied a constitutionally reasonable grace period within which to file her action. The Illinois Court of Appeals held that if the injury was discovered on 4 September 1976, fifteen days prior to the amendment's effective date, plaintiff was not afforded a constitutionally reasonable time and the new statute could not, therefore, bar her claim.
We find other cases which seem to approve shorter periods of limitation either distinguishable, in that they do not deal with statutes which shorten pre-existing periods, or simply unpersuasive.[9]
Defendant next argues that even if plaintiff's claim cannot be constitutionally barred by the four-year period of limitation in G.S. 1-15(c), it should be barred by the "one-year provision" therein since plaintiff's claim was brought more than one year from the date of discovery. Defendant and, apparently, the Court of Appeals, seem to treat the "one-year provision" of the statute as if it were a period of limitation separate and apart from the four and ten-year periods, severable therefrom, and independently enforceable. Defendant relies heavily on Section 7 of Chapter 977 which provides,
"If any provision of this act or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or application which can be given effect without the invalid provision or application, and to this end the provisions of this act are severable." (Emphasis supplied.)
Defendant also relies on the principle that when only part of a statute is unconstitutional, the constitutional portions will be given effect as long as they are severable from the invalid provisions. State ex rel. Andrews v. Chateau X, 296 N.C. 251, 250 S.E.2d 603 (1979); State v. Smith, 265 N.C. 173, 143 S.E.2d 293 (1965); Clark v. Meyland, 261 N.C. 140, 134 S.E.2d 168 (1964).
We do not think the legislature intended the severability provision in Section 7 to refer to the various clauses of G.S. 1-15(c), which comprise only one section and indeed constitute only one "provision" of Chapter 977. This Chapter is entitled, "An Act to Revise and Provide for Procedural and Substantive Laws Governing Claims for Professional Malpractice: To Revise the Statute of Limitations for Adults and Minors; To Provide for a Standard of Care, A Doctrine of Informed Consent, an Extension of the Good Samaritan Law, and the Elimination of the Ad Damnum Clause." As implied in its title, the act is far ranging in scope; its various provisions deal with several aspects of professional malpractice. Its most comprehensive provision, Section 4, deals exclusively with medical malpractice actions.
Further, where the various clauses of a statute are so interrelated and mutually dependent that one clause cannot be enforced without reference to another, the statute must stand or fall as a whole. Surplus *489 Store, Inc. v. Hunter, 257 N.C. 206, 125 S.E.2d 764 (1962). "A statute may be valid in part and invalid in part. If the parts are independent, or separable, but not otherwise, the invalid part may be rejected and the valid part may stand, provided it is complete in itself and capable of enforcement." (Emphasis supplied.) Constantian v. Anson County, 244 N.C. 221, 228, 93 S.E.2d 163, 168 (1956), quoting 82 C.J.S. Statutes § 92 (1953); Hobbs v. Moore County, 267 N.C. 665, 149 S.E.2d 1 (1966).
We are satisfied that the various clauses of G.S. 1-15(c) are so interrelated and mutually dependent as to be inseparable for purposes of determining the constitutionality of the statute's application to this case. The statute contains three periods of limitation which can properly be denominated as such  a three-year period, a four-year period, and a ten-year period. These are the periods in the statute which begin running when a malpractice claim accrues, i. e., at the time of defendant's last negligent act. Periods of limitation, by definition, are those periods which begin running upon accrual of the claim. G.S. 1-15(a); Motor Lines, Inc. v. General Motors Corp., 258 N.C. 323, 128 S.E.2d 413 (1962).
The primary limitation period of G.S. 1-15(c) is three years, Stanley v. Brown, supra, 43 N.C.App. 503, 259 S.E.2d 408, while the four and ten-year periods are exceptions thereto. The latter limitation periods apply only where the injury is not, nor should have been, discovered within two years of accrual, that is, within two years of the defendant's last act. Thus the four-year limitation period for non-"foreign object" claims, and the ten-year limitation period for "foreign object" claims, are both triggered by discovery of the injury more than two years after accrual. The one-year clause is a qualification of the four and ten-year limitation periods, which are, as noted, exceptions to the normal three-year period. If, therefore, the four-year period of limitation bars the action, as would be the case here if the statute were properly applicable, there is no reason to consider this qualification since it does not come into play. The qualification is to be considered only when the plaintiff has filed an action within the applicable limitation period. It is not an independent, separable provision but is part of a carefully meshed system of time limitations in malpractice actions, the cornerstones of which are the three, four and ten-year periods of limitation. As a qualification it must stand or fall with that which it qualifies.
Hence, if the four-year period of limitation contained in G.S. 1-15(c) cannot constitutionally be applied to plaintiff's claim, neither can the one-year-from-discovery clause which qualifies the limitation period.

III
The second question presented is whether a divorced mother, who has legal custody of her minor child and provides at least one-half of the support for that child, including all medical expenses not covered by insurance provided by the father, has standing to bring a claim for medical expenses and loss of services resulting from an injury to the child. We answer that she has standing.
The obligation to support and provide medical treatment for minor children has traditionally been placed on the father. In turn, the father ordinarily has been entitled to services of his child during the child's minority and, as between the parents, has alone been afforded the right to bring suit for parental losses due to injuries to the child. In contrast, the mother ordinarily had no such parental rights recognized by law, but was entitled "only to reverence and respect." 59 Am.Jur.2d Parent and Child § 11 (1971). Thus, although the plaintiff has legal custody of Brian and provides at least one-half of his support, including all medical expenses not covered by medical insurance provided by the father[10] defendant *490 maintains that only Brian's father is entitled to bring this action. We do not agree.
Two claims may arise when an unemancipated minor child is injured by the negligence of another: (1) a claim on behalf of the minor child to recover for his losses caused by the injury, and (2) a claim by the parent, ordinarily the father, for parental losses caused by (a) loss of services during the child's minority, and (b) medical expenses reasonably necessary for treating the child's injuries. Shipp v. Stage Lines, 192 N.C. 475, 135 S.E. 339 (1926). The parental right of action is based upon the support obligation. "The father's right of action . . . is based not only upon the right to services of the child but also upon his duty to care for and maintain the child." White v. Holding, 217 N.C. 329, 7 S.E.2d 825 (1940). Although this Court has stated that the father's primary entitlement to the services of his minor child exists as long as the minor is "in his custody or under his control," Smith v. Hewett, 235 N.C. 615, 617, 70 S.E.2d 825, 827 (1952), we believe that "custody or control" in this context necessarily includes the support obligation. The mere fact of custody does not entitle a parent to claim loss of services if that parent has failed to fulfill his or her support obligations. The parental right to the child's services, being contingent on parental fulfillment of support obligations, may be lost when the parent neglects or refuses to furnish support. See Gillikin v. Burbage, 263 N.C. 317, 139 S.E.2d 753 (1965); Hunycutt v. Thompson, 159 N.C. 29, 74 S.E. 628 (1912); Brooks v. DeWitt, 178 S.W.2d 718 (Tex.Civ.App.1944), rev'd on other grds., 143 Tex. 122, 182 S.W.2d 687 (1944), cert. denied, 325 U.S. 862, 65 S.Ct. 1196, 89 L.Ed. 1983 (1945); Howton v. Howton, 51 Cal.App.2d 323, 124 P.2d 837 (1942); Lessard v. Great Falls Woolen Co., 83 N.H. 576, 145 A. 782 (1929); Evans v. Kansas City Bridge Co., 213 Mo.App. 101, 247 S.W. 213 (1922). The parental right to recover for both loss of services and medical expenses is, therefore, tied to the support obligation; consequently the father ordinarily has the exclusive right to bring the action since he is primarily responsible for supporting the child and presumably is fulfilling his responsibility.
In contrast, the mother's duty to provide child support is secondary. Tidwell v. Booker, 290 N.C. 98, 225 S.E.2d 816 (1976). The mother does, however, have an obligation to support her child when the father fails in whole or in part to do so. In a recent interpretation of the child support provisions found in G.S. 50-13.4(b) and (c), we said:
"Taken together, these two statutes clearly contemplate a mutuality of obligation on the part of both parents to provide material support for their minor children where circumstances preclude placing the duty of support upon the father alone. Thus, where the father cannot reasonably be expected to bear all the expenses necessary `to meet the reasonable needs of the child[ren],' this Court has both the authority and the duty to order that the mother contribute supplementary support to the degree that she is able." Coble v. Coble, 300 N.C. 708, 268 S.E.2d. 185 (1980).
Since parental claims for both loss of services and medical expenses are based upon the parental support obligation, and since the mother has a legal obligation to support her child, even if secondary, a mother who has custody of the child and provides at least one-half of the child's support including some of the child's medical expenses should have standing to bring such claims. This much has been recognized by Professor Robert E. Lee, who in 3 North Carolina Family Law, § 241, pp. 108-09, (1963) wrote:
"The mother has such right of action where, by reason of the father's death, abandonment, or other cause, the duty of support and the right to the child's earnings *491 have devolved upon her ... where actual custody, support and care of a minor is in the mother or some person other than the father, it would seem that this should be a most important factor in holding that such person is the one to bring the action." (Emphasis supplied.)
Although modern statutes make the father and mother joint guardians of their children and equalize their parental obligations and rights, even under the common law the mother "might be entitled to bring an action for loss of services of an infant child where she shows facts entitling her to the services of the infant .... The modern tendency even at common law is to treat the mother's right with considerable favor." Schouler Marr.Div.Sep. & Dom.Rel. § 753, pp. 815, 816 (Sixth Ed.), quoted in Winnick v. Kupperman Construction Co., 29 App.Div.2d 261, 287 N.Y.S.2d 329 (1968). A number of decisions have permitted the mother to bring parental claims alone or in conjunction with her husband. E. g., Sims v. Virginia Electric & Power Co., 550 F.2d 929 (4th Cir. 1977); Yordon v. Savage, 279 So.2d 844 (Fla.1973); Thoreson v. Milwaukee & Suburban Transport Co., 56 Wis.2d 231, 201 N.W.2d 745 (1972); Southwestern Gas & Electric Co. v. Denney, 190 Ark. 934, 82 S.W.2d 17 (1935); Long v. City of Weirton, 214 S.E.2d 832 (W.Va.1975); Barker v. Saunders, 116 W.Va. 548, 182 S.E. 289 (1935).
Defendant, maintaining plaintiff has no standing, relies on Smith v. Hewitt, supra, 235 N.C. 615, 70 S.E.2d 825. This reliance is misplaced. In Smith two claims were brought to recover damages resulting from an accident in which a minor was injured. The first was brought by the unemancipated minor appearing through his mother as next friend. In the other claim the minor's father, divorced from the mother, sought to recover for loss of services and medical expenses. This Court, noting the father is primarily entitled to the services of the minor child as long as the child is in his custody or control, permitted the father to recover. In Smith, however, no custody order had been made, and medical bills were charged to the father. There was no evidence as to who in fact supported the child generally. Although the record indicated that the child lived part of the time with his mother and part of the time with his grandmother, the mother testified, "We were both to have him together." Id. at 617, 70 S.E.2d at 827.
We are not called on here to adjudicate what rights, if any, the father may have in a recovery made by the mother because he furnishes one-half of the child's support plus medical insurance.[11] The case presents no dispute between the parents. There can be, of course, no double recovery and defendant should not have to defend identical claims but once. See Sims v. Virginia Electric & Power Co., supra, 550 F.2d 929. From defendant's perspective, therefore, it should make little difference which parent brings the parental claims.
The decision of the Court of Appeals is reversed, and this case is remanded to that court with instructions to remand to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[4] Quoted infra.
[5] This case involves only the parental claims and not the child's claims for his injury.
[6] Chapter 1157 was repealed, effective 1 October 1979 by Chapter 654, § 3, 1979 Session Laws.
[7] Both periods of limitation are qualified by a requirement that such claims be brought within one year of discovery, discussed in more detail later in the text.
[8] The cases dealing with whether a particular grace period is constitutionally sufficient are voluminous. See generally Annot., 120 A.L.R. 758 (1939); Annot., 49 A.L.R. 1263 (1927). Accordingly, we here note only those cases wherein the grace period in question concerned five months or less: Cutsinger v. Cullinan, 72 Ill.App.2d 527, 29 Ill.Dec. 18, 391 N.E.2d 177 (1979) (fifteen days inadequate grace period within which to bring medical malpractice claim); Malossi v. McElligott, 166 Misc. 513, 2 N.Y.S.2d 712 (1938) (four months grace period within which to file an action seeking review of an officer's determination deemed unreasonable); Adams & Freese Co. v. Kenoyer, supra, 17 N.D. 302, 116 N.W. 98 (1908) (three months and twenty-one days unreasonable grace period for institution of proceedings on mortgages); Lamb v. Powder River Live Stock Co., 132 F. 434 (8th Cir. 1904) (three month period within which suit on certain judgments rendered outside the state had to be commenced within the state found unreasonable); Gilbert v. Ackerman, 159 N.Y. 118, 53 N.E. 753 (1899) (four and one-half month grace period regarding actions against a corporate director found unreasonable); Relyea v. Tomahawk Paper & Pulp Co., 102 Wis. 301, 78 N.W. 412 (1899) (sixty-one day grace period in regard to a personal injury claim found insufficient); Parmenter v. State, 135 N.Y. 154, 31 N.E. 1035 (1892) (eight week grace period held to be unreasonable).
[9] See, e. g., Shaw v. State, 8 Ariz.App. 447, 447 P.2d 262 (1968) (statute providing that actions by a lessor of a motor vehicle weighing over 6,000 pounds against the state must be commenced within thirty days of payment held not to violate any constitutional rights of the lessor); Oberst v. Mays, 148 Colo. 285, 365 P.2d 902 (1961) (thirty-day limitation period in which landowner aggrieved by assessment could test its validity held not unreasonably short); State, ex rel. v. Board of Education, 137 Kan. 451, 21 P.2d 295 (1933) (forty-five day period within which creditors could present claims against the state held reasonable); Mulvey v. Boston, 197 Mass. 178, 83 N.E. 402 (1908) (thirty-day period within which to bring existing tort claims against municipalities held reasonable).
[10] The record reveals by way of plaintiff's answers to some of defendant's interrogatories that by virtue of a separation agreement between plaintiff and the child's father, plaintiff has custody of the child with visitation rights accorded to the father; out of $250 needed monthly to support the child, the father provides only $125 and the balance is provided by the plaintiff; the father provides "medical insurance" for the child, but plaintiff pays all medical expenses not covered by medical insurance.
[11] Neither are we faced with a situation where the mother has mere custody and the father provides all support including medical expenses, or simply all the medical expenses. If, in such cases, it can be shown that neither party has defaulted on any parental obligation, interesting questions would arise as to which parent properly had standing to bring a claim for loss of services, or medical expenses, or both. Having, we believe, properly resolved the case before us, we leave these questions, as interesting as they are, for a later day.